IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WENYONG YUE, et al., | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN NASHED HANNA, | § | 1:24-CV-1125-DII |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| REACTION LABS, LLC a/k/a Lup, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |
| | § | |

## ORDER

Before the Court is Defendant/Counter-Plaintiff Reaction Labs, LLC a/k/a Lup's ("Lup")

motion for preliminary injunction, (Dkt. 56). Plaintiffs/Counter-Defendants Wenyong Yue ("Yue"),

Huizhoushi Huifangyuan Nongye Keji Youxian Gongsi a/k/a Botail ("Botail"), and yidiandian

Shenzhen wenhuachuanmeiyouxiangongsi a/k/a Cool Essential ("Cool Essential") (collectively,

"Plaintiffs") filed a response in opposition, (Dkt. 68), and Lup filed a reply, (Dkt. 74). Also before

the Court is Lup's supplement to its motion for preliminary injunction, (Dkt. 103), Plaintiffs'

response to the supplement, (Dkt. 106), and Plaintiffs' "Statement of Facts," (Dkt. 118). The Court

held a hearing on the motion for preliminary injunction on December 5, 2024. (Min. Entry, Dkt.

119). The Court also allowed the parties to file additional letter briefs. (Dkts. 124, 125, 127). Having

considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant

Lup's motion for a preliminary injunction.

1

# I. BACKGROUND

This is a dispute between owners of two different patents for magnetic data cables. Yue is owner of the U.S. Patent No. 11,756,703 ("the '703 Patent"), which disclosed a magnetic data cable. (Am. Compl., Dkt. 96, ¶ 1; *see also* Ex. A, Dkt. 96-1). The '703 Patent was issued to Yue on September 12, 2023, from U.S. Patent Application No. 18/302,164 ("the '164 Application"), filed on April 18, 2023. (*Id.*). Botail and Cool-Essential are China-based companies that operate Amazon stores to sell magnetic data cables to U.S. consumers under a license to the '703 Patent from Yue. (*Id.* ¶¶ 2–3).

Lup is a Texas-based company, owned by Defendant John Nashed Hanna ("Hanna") (collectively with Lup, "Defendants"), that operates an Amazon store which also sells magnetic data cables. (Defs.' Answer, Dkt. 55, ¶¶ 4–5). Lup is also the current owner and assignee of U.S. Patent No. 11,972,881 ("the '881 Patent"), which also disclosed a magnetized cable. (*Id.* ¶¶ 4–5, 58; *see also* Ex. B, Dkt. 96-2). The '881 Patent was issued on April 30, 2024, from U.S. Patent Application No. 18/339,272 ("the '272 Application") filed on June 22, 2023, which claims the priority of U.S. Provisional Application No. 63/482,006 ("the '006 Application"), filed on January 27, 2023. (*Id.* ¶ 4).

In May 2024, Lup filed five complaints through the Amazon Patent Evaluation Express Program ("APEX") against over 80 Amazon listings belonging to Cool Essential and Botail. (Am. Compl., Dkt. 96, ¶ 24). APEX is a program for Amazon users to report and remove infringing products. Under the APEX program, after a patent owner submits a complaint, Amazon provides the allegedly infringing seller 21 days to participate in an evaluation by a neutral third-party patent attorney. If the alleged infringer declines to participate, the reported listings are removed. (Hanna Decl., Dkt. 58, ¶ 7). Initially, on May 1, Lup filed an APEX complaint against 20 Amazon listings belonging to Cool Essential. After Cool Essential declined to participate in the APEX program, Amazon removed those 20 listings. (*Id.* ¶ 8). Thereafter, Defendants submitted four more

complaints pertaining to additional allegedly infringing products marketed by Cool Essential, Botail, and other third parties. (*Id.* ¶ 9). These listings too were deactivated. (*Id.* ¶ 12).

In response, on June 15, 2024, Plaintiffs filed their complaint in this case in the U.S. District Court for the Southern District of New York ("SDNY") against Hanna, Lup, and Amazon.com, Inc. ("Amazon"). (Dkt. 1). Plaintiffs brought four claims in their original complaint. Plaintiffs brought two declaratory judgment claims, seeking declarations that Plaintiffs' magnetic data cables do not infringe the '881 Patent, the '881 Patent is invalid over prior arts, and Amazon should release the restraints on Botail and Cool Essential's e-commerce stores. (*Id.* ¶¶ 25–31). Plaintiffs also brought a claim for patent infringement, arguing that Defendants and Amazon's actions collectively infringed the '703 Patent. (*Id.* ¶¶ 32–37). Last, Plaintiffs brought a claim for tortious interference with business relationships against Defendants. (*Id.* ¶¶ 38–44). In early July, Plaintiffs filed a motion for preliminary injunction against Defendants and Amazon, seeking a court order to reverse the lockdown on their Amazon stores while this case proceeds. (Dkt. 24).

Prior to answering the complaint, Plaintiffs and Amazon executed a settlement agreement on July 16, 2024, (Dkt. 88-1, at 8–9). The following day, Plaintiffs filed a notice voluntarily dismissing their claims against Amazon with prejudice. (Dkts. 33, 35). The Settlement Agreement contained a release of claims not only against Amazon, but also categories of third parties involved in the Amazon ecosystem, including Amazon "users." (Dkt. 88-1, at 3). As part of the Settlement Agreement, Amazon agreed to unlock 69 of Plaintiffs' e-commerce stores but decided to keep the 20 infringing products from Defendants' original APEX complaint as delisted. (Dkt. 32).

Defendants responded to Plaintiffs' complaint and motion for preliminary injunction in a few ways. Defendants filed a motion to transfer the case to the Western District of Texas. (Dkt. 51). Next, Defendants answered Plaintiffs' complaint, and Lup filed a counterclaim against Plaintiffs for infringement of the '881 Patent. (Dkt. 55). Lup also filed a motion for preliminary injunction,

3

seeking an injunction against Plaintiffs to not make or sell products that infringe the '881 Patent. (Dkt. 56). In response, Plaintiffs filed an answer and affirmative defense to Lup's counterclaim, denying liability for infringement of the '881 Patent and asserting that the '881 Patent is unenforceable due to inequitable conduct. (Dkt. 64). Plaintiffs also filed a response in opposition to Lup's motion for preliminary injunction, (Dkt. 68), and Lup replied, (Dkt. 74).

On September 11, 2024, the SDNY Court issued an order granting Defendants' motion to transfer the case to this Court. (Dkt. 72). The case was transferred into this Court on September 23, 2024. (Dkt. 75). On October 8, 2024, Defendants filed a motion for summary judgment, arguing that Plaintiffs' Settlement Agreement with Amazon released all of Plaintiffs' claims against Defendants. (Dkt. 88). On October 16, 2024, Plaintiffs filed an amended complaint against Defendants. (Dkt. 96).

On December 13, 2024, the Court granted Defendants' motion for summary judgment, finding that nearly all Plaintiffs' claims against Defendants were released by the Amazon Settlement Agreement (Dkt. 122). In its order, the Court also dismissed the only subset of Plaintiffs' claims that were not released by the Agreement. (*Id.*). Accordingly, the only remaining claim in this case is Lup's counterclaim against Plaintiffs for infringement of the '881 Patent.

The Court held a hearing on Lup's motion for preliminary injunction on December 5, 2024. (Min. Entry, Dkt. 119). Hours before the hearing, Plaintiffs filed a document labelled "Plaintiffs' Statement of Facts," which contains eleven exhibits that Plaintiffs request the Court to consider in resolution of Lup's motion. (Dkt. 118). At the hearing, the Court considered arguments from counsel on the parties' various filings related to Lup's motion. At the conclusion of the hearing, Lup requested that if the Court were inclined to issue the preliminary injunction, it should also enjoin Plaintiffs from transferring any assets currently based in the United States to any jurisdiction outside of the United States, and order Amazon to freeze all accounts associated with the Accused Products

and enjoin the transfer of any monies held in such accounts. Because this issue was not briefed, the Court invited the parties to file optional supplemental briefing on this issue. After the hearing, the Court also ordered the parties to file supplemental letter briefs on the bond requirement if it grants the request for preliminary injunctive relief. (*See* Dkt. 121). The parties have since filed their supplemental letter briefs, (Dkts. 124, 125, 127), and Lup has filed an amended proposed order on its motion, (Dkt. 120). Having considered all the briefs and exhibits submitted by the parties and the argumentation offered at the December 5 hearing, the motion for preliminary injunction is now ripe for resolution.

## II. LEGAL STANDARD

Pursuant to 35 U.S.C. § 283, district courts may grant injunctive relief to a patent holder in order to "prevent the violation of any right secured by patent," and the decision whether to do so is within the district court's sound discretion. *Novo Nordisk of North Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996). A preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 is governed by Federal Circuit law. *Revision Military, Inc. v. Balboar Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Since no single factor is dispositive, the district court must weigh all factors after analyzing each factor in light of the evidence presented. *Id.* A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com*, 239 F.3d at 1350.

# III. DISCUSSION

## A. Likelihood of Success on the Merits

The Court begins with the first requirement for a preliminary injunction: Lup's likelihood of success on the merits of its patent infringement claim. A patentee seeking a preliminary injunction must only demonstrate that it "will likely prove infringement of one [or more] claims of the [Asserted Patent], and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges." *Amazon.com*, 239 F.3d at 1351. The Court will first discuss infringement before turning to the issue of validity.

### 1. Infringement

At the preliminary injunction stage, "[a]n assessment of the likelihood of infringement, like a determination of patent infringement at a later stage in litigation, requires a two-step analysis. First, the court determines the scope and meaning of the patent claims asserted . . . [Secondly,] the properly construed claims are compared to the allegedly infringing device." *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). The preponderance of evidence standard is applicable to the infringement inquiry. *Centricut, L.L.C. v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).

Lup seeks to prove infringement according to Claim 1 of the '881 Patent. (Memo., Dkt. 57, at 1). Lup argues that Plaintiffs' Accused Products infringe Lup's '881 Patent and provides a chart with an element-by-element analysis for two representative products, a narrow and a wide accused magnetic cable. (*See id.* at 5–6; Ex. A, Dkt. 57-1). Lup lists all the Accused Products in Exhibit B to its motion, (Dkt. 57-2), and has provided the Court with the specific Amazon Standard Identification Number ("ASIN") for the accused listings on Amazon, (Dkt. 120-1). Plaintiffs have not rebutted this infringement analysis and have not identified any element it contends is not present in any of the Accused Products. Rather, Plaintiffs' response mostly focuses on arguments as to why

the '881 Patent is invalid—not arguments as to why the Accused Products do not infringe the '881 Patent. (*See* Resp., Dkt. 68, at 10–14). Given that Lup's infringement analysis is well-argued, and Plaintiffs offer no response, the Court finds that Lup has shown a likelihood of success on the merits regarding infringement.

## 2. Invalidity

Patents are presumed valid and enforceable, and the burden of establishing invalidity or unenforceability rests on the challenger. 35 U.S.C. § 282. At trial, to overcome this presumption, "the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). At the preliminary injunction stage, however, "the trial court does not resolve the validity question but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed. Cir. 1992). Plaintiffs make three arguments as to why the '881 Patent is invalid. The Court addresses each in turn.

### a. Inequitable Conduct

First, Plaintiffs' primary argument is that '881 Patent is unenforceable because Hanna engaged in inequitable conduct when he was prosecuting his patent. Inequitable conduct is an equitable defense to patent infringement that renders a patent unenforceable upon a finding that the patentee has breached the duty of candor and good faith owed to the U.S. Patent and Trademark Office ("PTO") during prosecution of a patent application. *See Therasense v. Becton*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The duty of candor includes the requirement to submit to the PTO information material to patentability of a pending claim, 37 C.F.R. § 1.56(a) (2009), and a holding of inequitable conduct can be based on the failure to disclose such information to the PTO, if the applicant acted with deceptive intent. *Purdue Pharma L.P. v. Endo Pharm.*, 438 F.3d 1123, 1128 (Fed.

Cir. 2006). Inequitable conduct requires showing "specific intent and materiality by clear and convincing evidence." *Therasense*, 649 F.3d at 1285.

Plaintiffs' allegation of inequitable conduct rests exclusively on the fact that Lup's '881 Patent included an image of the MutecPower cable, a data cable sold by third party LS Global Trading LLC ("LS Global"). (Resp., Dkt. 68, at 4–5, 10–11). Plaintiffs argue that Lup's submission of the image of a MutecPower cable during prosecution of the '881 Patent was a material misrepresentation and a breach of the duty of candor. Plaintiffs argue that submission of the MutecPower image amounts to a misrepresentation of inventorship and that the MutecPower cable anticipates the '881 Patent. Plaintiffs further argue that Lup intentionally sought to defraud the PTO. (*Id.*). In response, Lup argues that the inclusion of the image is nothing more than a clerical error that has already been corrected by the PTO's acceptance of a Certificate of Correction substituting a drawing in place of the image of the MutecPower cable. (*See* Reply, Dkt. 74, at 3; Scardino Decl., Dkt. 104-1; Certificate of Correction, Dkt. 104-2). Lup further argues that Plaintiffs do not show the requisite specific intent since the image was actually disclosed to the patent examiner and does not support that the incorrect image was material to the prosecution of the '881 Patent. (Reply, Dkt. 74, at 3).

The Court agrees with Lup. Submission of an incorrect image, without more, is insufficient to rise to the level of intentional material misrepresentation required for inequitable conduct. Plaintiffs provide no precedent to the contrary. Further, Plaintiffs do not address the correction of the improperly submitted image, nor that the image was replaced by the PTO with a drawing not bearing the MutecPower brand. No other evidence supports that Lup acted with intent to deceive the PTO, nor that the image that was submitted was material to patentability. Plaintiffs assert, without evidence, that the MutecPower cable in the image is a magnetic cable and therefore would have been material to patentability. However, at the preliminary injunction hearing, Lup presented

the MutecPower cable in question to the Court. The Court notes that the MutecPower cable is not a magnetic cable, and, therefore, the existence of that cable, even if it were kept from the PTO, would have been immaterial to the PTO's decision to grant the patent. Accordingly, the Court finds that Plaintiffs' allegations of inequitable conduct based solely on the submission of the MutecPower cable image are unpersuasive at this stage of the litigation.

### b. Priority of the '703 Patent

Second, Plaintiffs argue that their '703 Patent was prior art that anticipates Lup's '881 Patent. (*See* Resp., Dkt. 68, at 11–12). This argument, in turn, rests on the issue of which patent can claim priority to the invention—the '881 Patent or the '703 Patent. Plaintiffs' '703 Patent claims priority from a patent application issued on April 18, 2023. (Am. Compl., Dkt. 96, ¶ 1; *see also* Ex. A, Dkt. 96-1). By contrast, Lup's '881 Patent claims priority to a provisional application filed on January 27, 2023. (Defs.' Answer, Dkt. 55, ¶ 4; Ex. B, Dkt. 96-2). Plaintiffs, however, argue that the '881 Patent cannot claim priority to the '006 provisional application because the provisional document fails to provide an enabling disclosure for the '881 Patent that was issued. (Resp., Dkt. 68, at 11–12). Plaintiffs then list four elements of the '881 Patent that are allegedly not described in the provisional application. (*Id.*).

The Court finds this argument to be unpersuasive. For a patent to claim priority from the filing date of its provisional application, it must satisfy 35 U.S.C. § 119(e)(1)—"the specification of the provisional must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (quoting 35 U.S.C. § 112 ¶ 1). Plaintiffs' argument regarding the deficiency of the '006 provisional application's written description is conclusory. Plaintiffs simply state that the '006 provisional application does not describe four

9

elements of the '881 Patent without analyzing what the provisional application says and how its descriptions are inadequate as compared to the '881 Patent. Furthermore, Plaintiffs do not even identify which claim is allegedly not supported by the '006 provisional application. In contrast, Lup's reply brief rebuts Plaintiffs' deficient disclosure argument by addressing how each of the four elements Plaintiffs identified are sufficiently described in the provisional application. (Reply, Dkt. 74, at 4–5). Based upon this briefing, the Court cannot conclude that the '006 provisional application fails to enable the invention in the '881 Patent. As such, the Court finds that the '881 Patent claims priority to the '006 provisional application, and thus has priority over the '703 Patent and is not anticipated by it.

### c. Prior Art

Last, Plaintiffs argue that the '881 Patent is invalid because it is anticipated by prior art. (Resp., Dkt. 68, at 10). In their amended complaint, Plaintiffs make passing reference to three prior art references that they allege anticipate the '881 Patent or makes it nonobvious. (*See* Am. Compl., Dkt. 96, ¶¶ 46–52). In Lup's motion, Lup argues that these three prior art references fail to invalidate its patent because they do not "describe every element of the claimed invention, either expressly or inherently." (Memo., Dkt. 57, at 7 (quoting *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)) (cleaned up)). Lup describes in detail how these three references do not contain certain elements of the '881 Patent and how in combination not all elements are present between the various references. (*See id.* at 7–11). Plaintiffs, meanwhile, do not substantively rebut Lup's prior art analyses as to these references. The only prior art that they specifically mention in their response is the MutecPower data cable, which, as mentioned above, they allege Lup copied from LS Global. (Resp., Dkt. 68, at 13–14).

The Court finds that Plaintiffs have not presented persuasive evidence that the '881 Patent is invalid as anticipated by prior art. Plaintiffs have identified various prior art references which they

claim anticipate the '881 Patent but have not provided a claim-by-claim analysis indicating how any of these references discloses each element of claim of 1 of the '881 Patent. In contrast, Lup has provided detailed argumentation as to three of those prior art references. Because those arguments have not been rebutted, those references cannot support a finding of invalidity. *Advanced Display Sys.*, 212 F.3d at 1282 (Fed.Cir.2000) (holding that invalidity requires that the prior art "describe every element of the claimed invention, either expressly or inherently"). As for the Mutec Power data cable—the only prior art reference Plaintiffs mention in their response—as noted above, because the MutecPower data cable is not a magnetic cable, it cannot anticipate the '881 Patent.

To date, Plaintiffs have not provided any substantive argumentation as to why the prior art references they have identified anticipate the '881 Patent elements. All Plaintiffs have done in their briefs and in their recently filed "Statement of Facts" is mention several possible prior art references without analyzing how those references disclose the '881 Patent elements. But it is not the Court's duty to scour the record to find support of a party's allegations. Therefore, Plaintiffs' filing of prior art exhibits without any further argumentation is insufficient to support their claim of invalidity.

At the hearing, Plaintiffs argued that they will detail how their identified prior art references invalidate the '881 Patent in future invalidity contentions. They requested that the Court delay resolution of the invalidity issue until the record is more fully developed. However, at the preliminary injunction stage, the Court must make a determination as to the persuasiveness of Plaintiffs' invalidity evidence. *New England Braiding Co.*, 970 F.2d at 882–83. Plaintiffs filed this case in June, bringing, *inter alia*, a declaratory judgement claim asserting that the '881 Patent is invalid as anticipated by prior art. (Compl., Dkt. 1, ¶¶ 29–31). Lup then filed its motion for preliminary injunction in August. (Dkt. 56). As such, Plaintiffs have had six months to develop a substantive argument as to how at least one prior art reference anticipates the '881 Patent, and yet Plaintiffs have

failed to do so. This Court will not allow Plaintiffs to infinitely delay resolution of Lup's motion simply because they have failed to timely produce sufficient evidence of invalidity.

### d. Conclusion

As the party challenging the validity of the '881 Patent, Plaintiffs bear the burden of presenting evidence to overcome the presumption that the '881 Patent is valid. *Schumer*, 308 F.3d at 1315. At this stage, however, Plaintiffs have failed to present any persuasive evidence or argumentation that the patent is invalid due to inequitable conduct, the priority of the '703 Patent, or other prior art. Accordingly, the Court finds that Plaintiffs are unlikely to succeed in proving at trial that the '881 Patent is invalid by clear and convincing evidence. By contrast, the Court finds that Lup is likely to succeed on the issue of validity.

Therefore, having found that Plaintiffs' sale of the Accused Products infringes the '881 Patent and that the '881 Patent is valid, the Court is convinced that Lup is likely to succeed on the merits of its patent infringement claim.

### B. Irreparable Harm

The second preliminary injunction requirement is a showing of irreparable harm absent injunctive relief. The "patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). Such irreparable harm necessitating an injunction has included price erosion, loss of market position, and loss of business opportunities, among others. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013). Furthermore, the Federal Circuit has consistently held that a party that moves for a preliminary injunction and clearly establishes likelihood of success on the merits "receives the benefit of a presumption on the second" factor, irreparable harm. *See Reebok*, 32 F.3d at 1556; *see also Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). While the presumption is

rebuttable, it shifts the ultimate burden of production onto the accused infringer. *See Reebok*, 32 F.3d at 1556.

Lup argues that Plaintiffs' sale of the Accused Products irreparably harms Lup for a few reasons. First, Lup asserts that its products are in direct competition with the Accused Products because they are all sold on Amazon using similar marketing claims and competing for the same sales. Second, Lup alleges that the Accused Products cause potentially irreversible price erosion by being significantly cheaper than Lup's products. Third, Lup asserts that the availability of the Accused Products is causing loss of market share, which in turn is causing Lup to lose business opportunities with potential licensees. (Memo., Dkt. 57, at 11–14). Lup provides evidence of price erosion, loss of market share, and loss of business opportunities in a declaration from Hanna, (Dkt. 58, ¶¶ 16–35), and provided more information on these issues at the preliminary injunction hearing, (Min. Entry, Dkt. 119). By contrast, Plaintiffs do not rebut the specific irreparable harms alleged by Lup. Instead, Plaintiffs repeat their invalidity arguments and argue, *in toto*, that "Lup has not demonstrated why damages would be a sufficient remedy if the '881 Patent is found valid, infringed, and enforceable." (Resp., Dkt. 68, at 14).

The Court finds that Lup has established a likelihood of irreparable harm if infringement of its patent continues. Having found that Lup is likely to succeed on the merits, Lup is presumed to be irreparably harmed by the infringement of its patent. *See Reebok*, 32 F.3d at 1556. Plaintiffs have not only failed to overcome this presumption, but they have also failed to provide any meaningful evidence to rebut Lup's arguments regarding price erosion, loss of market share, and loss of business opportunities—all of which the Federal Circuit has recognized as irreparable harm that warrants injunctive relief. *Aria Diagnostics, Inc.*, 726 F.3d at 1304. Accordingly, Lup has established the second requirement for preliminary injunctive relief.

13

**C. Balance of the Equities**

The third preliminary injunction requirement is balance of the equities. In evaluating this factor, "[t]he district court must balance [the irreparable harm caused with] the harm that . . . the non-moving party will incur if the injunction is granted." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Lup argues that the hardship suffered by Lup and its potential licensees is the irreparable harm described above. Lup further argues that it is a small individual proprietorship that is harmed by having infringing products on the market, while Plaintiffs Botail and Cool Essential appear to be recently formed subsidiaries of a larger business that has the resources to withstand an injunction. (Memo., Dkt. 57, at 14–15). In their response brief, Plaintiffs once again repeat their arguments pertaining to invalidity and inequitable conduct. (Resp., Dkt. 68, at 14). At the preliminary injunction hearing, Plaintiffs argued that the balance of the equities is in their favor because Lup, as a small company, would be unable to pay damages to correct the harms of a preliminary injunction should Plaintiffs prevail at trial. (Min. Entry, Dkt. 119). Plaintiffs further detail the loss of sales they would experience should the sale of the Accused Products be enjoined in their supplemental letter brief. (*See* Dkts. 125, 127).

The Court finds that the balance of equities favors Lup. Absent an injunction, Lup would lose the value of its patent. As mentioned above, Plaintiffs' infringing activities are causing Lup irreparable harm which is compounded by its status as a small company—a representation Plaintiffs have not rebutted. While Plaintiffs have provided some evidence of the monetary losses they would suffer under an injunction, at no point have Plaintiffs argued that a preliminary injunction would unduly prejudice them. Rather, any harm to Plaintiffs is protectable by a bond, which the Court addresses further below. Accordingly, Lup has established the third requirement for preliminary injunctive relief.

14

**D. Public Interest**

The last preliminary injunction requirement is the impact of the injunction on the public interest. "Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458. Lup argues there is no "critical public interest" that would counsel against an injunction, and the public will not be harmed by the removal of the Accused Products from the marketplace. (Memo., Dkt. 57, at 15–16). In response, Plaintiffs argue that the public will be harmed by less competition for data cables should the sale of their products be enjoined. (Resp., Dkt. 68, at 15).

The Court finds that the public interest in protecting patent rights favors granting the preliminary injunction. In patent cases, "the public interest nearly always weighs in favor of protection [of a patentee's intellectual] property rights in the absence of countervailing factors." *Apple Inc. v. Samsung Elecs. Co.*, 801 F.3d 1352, 1365 (Fed. Cir. 2015). Here, Plaintiffs have not identified any valid countervailing public interest considerations. Plaintiffs argue that the public will be harmed by less market competition for data cables, but "competition in violation of lawful patent rights hurts innovation," and "[t]here is a strong public interest in ensuring that valid patents are enforced." *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 257 (S.D.N.Y. 2006), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008). Moreover, the public will not be harmed by the removal of the Accused Products because viable options are available from Lup and its prospective licensees. *See Metalcraft of Mayville, Inc. v. the Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) (affirming lower court's finding that the public interest favored the issuance of an injunction "in light of the importance of encouraging innovation and in light of the fact that the public can still obtain the patented suspension system

from [the Patent Owner]"). Accordingly, Lup has established the last requirement for preliminary injunctive relief.

### E. Scope of Injunctive Relief

Having determined that Lup has established the four preliminary injunction requirements, the Court will issue a preliminary injunction to enjoin the sale of the Accused Products. At the hearing, Lup made an argument for additional injunctive relief: a request to enjoin the transfer of Plaintiffs' American assets and order the freezing of monies and inventories in Plaintiffs' Amazon and other related e-commerce accounts. (Min. Entry, Dkt. 119; *see also* Proposed Order, Dkt. 120, at 14). On invitation of the Court, the parties submitted supplemental letter briefs on the appropriateness of this relief. (*See* Dkts. 124, 125, 127).

Lup argues that an order to freeze Plaintiffs' assets is warranted because it is concerned that Plaintiffs will withdraw their assets and accounts from the United States once this Court issues a preliminary injunction, which will allow them to effectively evade satisfaction of a monetary judgment should Lup prevail at trial. (Lup Letter Br., Dkt. 124, at 3). Lup offers two bases for this concern. First, Lup alleges that Botail and Cool Essentials are just two of many interrelated subsidiaries selling infringing products. Lup asserts that these subsidiaries may all be owned by a larger, common foreign parent company that may be using subsidies to avoid potential liability. Second, Lup alleges that Plaintiffs have already attempted to skirt the outcome of the original APEX proceeding and its Settlement Agreement with Amazon by selling at least ten of the twenty products that it agreed not to sell. Lup argues that this alleged activity suggests that "unless restrained by this Court, Plaintiffs will baulk at whatever judgment ultimately issues in this case." (*Id.*). Lup notes that at the hearing, when presented with these allegations, Plaintiffs' counsel gave no assurances regarding whether Plaintiffs would withdraw their assets from the U.S. to avoid paying a money judgment. Instead, Plaintiffs' counsel simply noted that this was "probably" not a concern. (*Id.*). Lup

16

then argues that their request is supported by the decisions of other district courts which have ordered similar relief. (*Id.* (citing *Qin v. P'ships & Unincorporated Ass'ns on Schedule "A,"* No. 6:21-CV-1243-ADA, 2022 WL 80274, at *6 (W.D. Tex. Jan. 7, 2022) and then citing *Shenzhen Ke Xiu Tech. Co. Ltd, v. Unincorporated Ass'ns Identified In Schedule A*, No. 1:24-cv-01465 (E.D. VA, Nov. 6, 2024), ECF No. 24)).

In contrast, Plaintiffs do not address specifically why Plaintiffs are not entitled to an injunction concerning the transfer and freezing of their assets. (*See* Pls.' Letter Br., Dkt. 125, at 1–4). Plaintiffs do not provide assurances that they will not transfer their assets to avoid a money judgment, nor do they respond to the case citation Lup provided in its proposed order to support its request. Instead, Plaintiffs continue to argue why any preliminary injunctive relief in this case is unwarranted due to the economic harm it will cause Plaintiffs. In lieu of a preliminary injunction, Plaintiffs offer a counterproposal: They suggest that they be required to post a reasonable bond to adequately compensate Lup until the resolution of this case. Plaintiffs then go a step farther; they not only request that the Court not grant Lup any preliminary injunctive relief, but they also then request that the Court grant *Plaintiffs* injunctive relief in the form of ordering Amazon to release their currently frozen inventory. (*Id.*). Plaintiffs make this request even though Plaintiffs have no remaining claim in this case. (*See* Order, Dkt. 127). Last, Plaintiffs request an oral hearing prior to the entry of a decision on the freezing of assets. (*See* Pls.' Letter Br., Dkt. 125, at 5).

The Court finds that Lup's request for an injunction concerning the transfer and freezing of Plaintiffs' assets is warranted. Lup has made a persuasive argument for why Plaintiffs may try to evade a monetary judgment in this case. The Court is particularly concerned that at no point at the hearing or in their supplemental brief did Plaintiffs provide assurances that they would not try to transfer assets to evade a judgment. Further, Plaintiffs have provided no argument for why this relief should not issue. In light of the other district courts that have granted such relief, the Court finds it

appropriate to enjoin the transfer of Plaintiffs' assets and freeze the monies and inventory in Plaintiffs' Amazon stores while this case proceeds. Finally, the Court does not find that a hearing on this issue is necessary given that the parties discussed this issue at the preliminary injunction hearing and the Court already provided the parties the opportunity to file a supplemental brief.

### F. Bond Requirement

Last, the Court addresses the requirement that Lup post a bond. Under the Federal Rules, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "The amount of a bond is a determination that rests within the sound discretion of a trial court." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Circ. 2006). "The party against whom a preliminary injunction is sought has the burden of establishing the amount of a bond necessary to secure against the wrongful issuance of the injunction." *LEGO A/S v. ZURU Inc.*, 799 Fed. App'x 823, 837–38 (Fed. Cir. 2020). In addition, "a court is not required to order security in respect of claimed economic damages that are no more than speculative." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 566 (S.D.N.Y. 2006).

Lup requests that a nominal bond of $3,000 be required here at the rate of $1,000 per defendant. (Lup Letter Br., Dkt. 124, at 2–3). Lup argues that a nominal bond is equitable because Lup is a young, small company with limited resources whose market share has been significantly affected by Plaintiffs' infringing activities. (*Id.*). In contrast, Plaintiffs request a bond of $700,000 arguing that such an amount would better reflect the substantial sales that Plaintiffs make from the Accused Products and the fact that Lup may not have resources to pay Plaintiffs' potential damages for a wrongful injunction should Plaintiffs prevail in this suit. (Pls.' Letter Br., Dkt. 127). Plaintiffs also request an oral hearing on the bond issue. (*Id.*).

18

The Court finds that a bond in the amount of $25,000 is reasonable and proper in this case to protect Plaintiffs' interests. The Court credits Lup's representation that it cannot pay a higher bond and finds that requiring a higher bond would not be in the public interest because it would incentivize larger companies to infringe on a larger scale to artificially inflate the bond requirement for smaller patent owners. The Court also denies Plaintiffs' request for a hearing as the parties have already briefed the issue and had an opportunity to discuss the bond requirement at the preliminary injunction hearing.

## IV. CONCLUSION

Accordingly, Lup's motion for preliminary injunction, (Dkt. 56), is **GRANTED**. The Court enters the following preliminary injunction.

**IT IS ORDERED** that until the Court enters judgment in this case, Plaintiffs and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Plaintiffs are enjoined from:

1.      making, using, importing, offering for sale, or selling the products accused of infringement (identified in Exhibit A, Dkt. 120-1) and any substantially similar products, specifically including those set forth in Exhibit B attached to Lup's Motion for Preliminary Injunction (the "Accused Products") (Dkt. 57-2);

2.      effecting assignments or transfers, forming new entities, or creating or utilizing any Amazon ecommerce store or other means of making, using, importing, offering for sale, or selling the Accused Products for the purpose of circumventing or otherwise avoiding the activities enjoined herein, and

3.      instructing, aiding, or abetting any other person or business entity from engaging in any activities enjoined by this Order.

**IT IS FURTHER ORDERED** that Plaintiffs are enjoined from transferring any assets currently based in the United States to any jurisdiction outside of the United States, and **ORDERS** Amazon.com, Inc. to freeze all accounts and Accused Products and restrain and enjoin the transfer of any monies held in such accounts until further ordered by this Court.

**IT IS FINALLY ORDERED** that pursuant to Federal Rule of Civil Procedure 65(c), Lup is required to post a $25,000.00 bond.

**SIGNED** on December 17, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE