IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WENYONG YUE, et al., | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN NASHED HANNA, | § | |
| | § | 1:24-CV-1125-DII |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| REACTION LABS, LLC a/k/a Lup, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |
| | § | |

**ORDER**

Before the Court is Defendant John Nashed Hanna ("Hanna") and Defendant/Counter-Plaintiff Reaction Labs, LLC a/k/a Lup's ("Lup") (collectively, "Defendants") motion for summary judgment, (Dkt. 88, 92-1).[1] Plaintiffs/Counter-Defendants Wenyong Yue, Huizhoushi Huifangyuan Nongye Keji Youxian Gongsi a/k/a Botail ("Botail"), and yidiandian Shenzhen wenhuachuanmeiyouxiangongsi a/k/a Cool Essential ("Cool Essential") (collectively, "Plaintiffs") filed a response in opposition, (Dkts. 109, 112), and Defendants filed a reply, (Dkts. 107, 111-1). Also before the Court is Plaintiffs' motion for preliminary injunction, (Dkt. 24), Defendants' motion to dismiss Plaintiffs' first amended complaint, (Dkt. 104), and all responsive briefing to those motions. Having considered the parties' briefs, the record, and the relevant law, the Court issues the following order.

---

[1] Docket numbers throughout this order refer to both unsealed and sealed versions of each filing.

# I. BACKGROUND

This is a dispute between owners of two different patents for magnetic data cables. Yue is owner of the U.S. Patent No. 11,756,703 ("the '703 Patent"), which disclosed a magnetic data cable. (Am. Compl., Dkt. 96, ¶ 1; *see also* Ex. A, Dkt. 96-1). The '703 Patent was issued to Yue on September 12, 2023 from U.S. Patent Application No. 18/302,164 ("the '164 Application"), filed on April 18, 2023. (*Id.*). Botail and Cool-Essential are China-based companies that operate Amazon stores to sell magnetic data cables to U.S. consumers under a license to the '703 Patent from Yue. (*Id.* ¶ 2–3).

Lup is a Texas-based company, owned by Hanna, that operates an Amazon store which also sells magnetic data cables. (Defs.' Answer, Dkt. 55, ¶¶ 4–5). Lup is also the current owner and assignee of U.S. Patent No. 11,972,881 ("the '881 Patent"), which also disclosed a magnetized cable. (*Id.* ¶¶ 4–5, 58; *see also* Ex. B, Dkt. 96-2). The '881 Patent was issued on April 30, 2024, from U.S. Patent Application No. 18/339,272 ("the '272 Application") filed on June 22, 2023, which claims the priority of U.S. Provisional Application No. 63/482,006 ("the '006 Application") filed on January 27, 2023. (*Id.* ¶ 4).

In May 2024, Lup filed five complaints through the Amazon Patent Evaluation Express Program ("APEX") against over 80 Amazon listings belonging to Cool Essential and Botail. (Am. Compl., Dkt. 96, ¶ 24). APEX is a program for Amazon users to report and remove infringing products. Under the APEX program, after a patent owner submits a complaint, Amazon provides the allegedly infringing seller 21 days to participate in an evaluation by a neutral third-party patent attorney. If the alleged infringer declines to participate, the reported listings are removed. (Hanna Decl., Dkt. 58, ¶ 7). Initially, on May 1, Lup filed an APEX complaint against 20 Amazon listings belonging to Cool Essential. After Cool Essential declined to participate in the APEX program, Amazon removed those 20 listings. (*Id.* ¶ 8). Thereafter, Defendants submitted four more

complaints pertaining to additional allegedly infringing products marketed by Cool Essential, Botail, and other third parties. (*Id.* ¶ 9). These listings too were deactivated. (*Id.* ¶ 12).

In response, on June 15, 2024, Plaintiffs filed their complaint in this case in the U.S. District Court for the Southern District of New York ("SDNY") against Hanna, Lup, and Amazon.com, Inc. ("Amazon"). (Dkt. 1). Plaintiffs brought four claims in their original complaint. Plaintiffs brought two declaratory judgment claims, seeking declarations that Plaintiffs' magnetic data cables do not infringe the '881 Patent, the '881 Patent is invalid over prior arts, and Amazon should release the restraints on Botail and Cool Essential's e-commerce stores. (*Id.* ¶¶ 25–31). Plaintiffs also brought a claim for patent infringement, arguing that Defendants and Amazon's actions collectively infringed the '703 Patent. (*Id.* ¶¶ 32–37). Last, Plaintiffs brought a claim for tortious interference with business relationships against Defendants. Plaintiffs argued that Defendants knew or should have known that their '881 Patent did not have priority and thus their APEX complaints were fraudulently filed with Amazon to stop Plaintiffs' Amazon sales. (*Id.* ¶¶ 38–44). In early July, Plaintiffs then filed a motion for preliminary injunction against Defendants and Amazon, seeking a court order to reverse the lockdown on their Amazon stores while this case proceeds. (Dkt. 24).

Prior to answering the complaint, Plaintiffs and Amazon executed a settlement agreement on July 16, 2024, (Dkt. 88-1, at 8–9). The following day, Plaintiffs filed a notice voluntarily dismissing their claims against Amazon with prejudice. (Dkts. 33, 35). The Settlement Agreement contained a release of claims not only against Amazon, but also categories of third parties involved in the Amazon ecosystem, including Amazon "users." (Dkt. 88-1, at 3). As part of the Settlement Agreement, Amazon agreed to unlock 69 of Plaintiffs' e-commerce stores but decided to keep the 20 infringing products from Defendants' original APEX complaint as delisted. Accordingly, Plaintiffs reasserted their request for a preliminary injunction to get the remaining stores unlocked, which would require Defendants to release its APEX complaint. (Dkt. 32).

Defendants responded to Plaintiffs' complaint and motion for preliminary injunction in a few ways. First, they filed a motion to dismiss on the basis that the SDNY Court lacked personal jurisdiction over them and that SDNY was an improper venue because Defendants are residents of Texas. (Dkt. 48). Defendants also filed a motion to transfer the case to the Western District of Texas. (Dkt. 51). Next, Lup filed a counterclaim against Plaintiffs for infringement of the '881 Patent, (Dkt. 55), and a motion for preliminary injunction, seeking an injunction against Plaintiffs to not make or sell products that infringe the '881 Patent. (Dkt. 56). Last, Defendants filed a letter motion for leave to file a motion for summary judgment arguing that Plaintiffs had released their claims against Defendants under the terms of the Amazon Settlement Agreement. (Dkt. 67).

On September 11, 2024, the SDNY Court issued an order denying Defendants' motions to dismiss as moot but granting Defendants' motion to transfer the case to this Court. (Dkt. 72). The case was transferred into this Court on September 23, 2024. (Dkt. 75). On October 8, 2024, Defendants filed their motion for summary judgment, reasserting their argument that Plaintiffs' Settlement Agreement with Amazon released all of Plaintiffs' claims against Defendants. (Dkt. 88).

On October 16, 2024, Plaintiffs filed an amended complaint against Defendants. (Dkt. 96). In the amended complaint, Plaintiffs dropped their prior patent infringement claim for the '703 Patent. Otherwise, the amended complaint is similar to the original complaint: Plaintiffs still assert two claims for declaratory judgment related to the invalidity of the '881 Patent and one claim for tortious interference. (*See id.* ¶¶ 37–59). The major additions in the amended complaint include new allegations that the '881 Patent is unenforceable for inequitable conduct, (*id.* ¶¶ 37–45), and a brief mention of additional APEX complaints that Defendants filed with Amazon after the case was filed in support of Plaintiffs' tortious interference claim, (*see id.* ¶ 25).

After the filing of the amended complaint, Plaintiffs filed a response in opposition to Defendants' motion for summary judgment, (Dkts. 109, 112), and Defendants filed a reply in

support, (Dkts. 107, 111-1). Further, Defendants filed a motion to dismiss Plaintiffs' first amended complaint, (Dkt. 104). Plaintiffs filed a response opposing the motion to dismiss, (Dkt. 113), and Defendants replied, (Dkt. 114).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. DISCUSSION

Although at the heart of this case lie questions of patent infringement and priority of patent applications, the issue before the Court in this order is a simple contract question: When Plaintiffs executed their Settlement Agreement with Amazon, did they also release their claims against Defendants? The Court finds that Plaintiffs did just that.

Under Washington law, which governs the Settlement Agreement between Plaintiffs and Amazon, (*see* Dkt. 88-1, ¶ 6(f)), as well as the Amazon Services Agreement between all parties and Amazon, (*see* Ex. B, Dkt. 88-3, at 14), courts follow the "objective manifestation theory of contracts," meaning that they focus "on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Accordingly, contract interpretation turns on giving words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Extrinsic evidence is relevant, if at all, "to determine the meaning of specific words and terms used"—not to "show an intention independent of the instrument" or to "vary, contradict, or modify the word." *Id.* (quoting *Hollis v. Garwall, Inc.*, 974 P.2d 836, 843 (Wash. 1999)); *see also Go2Net, Inc. v. C I Host. Inc.*, 60 P.3d 1245 (Wash. Ct. App. 2003) (explaining that parties may not use extrinsic evidence to demonstrate a party's subjective intent as to the contract's meaning). Finally, Washington courts consider contract interpretation as a question of law that is appropriate for a court to determine at summary judgment, rather than a question of fact. *See Hearst Commc'ns. Inc.*, 115 P.3d at 271 (granting summary judgment based on the court's interpretation of the contract at issue).

The executed Settlement Agreement between Plaintiffs and Amazon states:

> Plaintiffs hereby release, acquit and discharge Amazon and its current and former predecessors, agents, attorneys, insurers, servants, employees, officers, directors, shareholders, affiliates (including any Amazon subsidiary or related company), *users*, and customers (all of the foregoing in their capacity as such) from *any and all actions*, causes of action, claims or demands, liabilities, losses, damages, attorneys' fees

> and court costs for any claim of any nature, known or unknown, *relating to the Lawsuit, Plaintiff Yue's patent, or any other intellectual property right*, arising prior to the Effective Date.

(Dkt. 88-1, ¶ 4) (emphasis added). In turn, the Agreement defines the "Lawsuit" as this litigation, and the definition includes Plaintiffs' patent infringement claims, declaratory judgment claims, and tortious interference claims related to Defendants' APEX complaints. (*Id.* at 1). In other words, by executing the Settlement Agreement, Plaintiffs agreed to release a broad number of claims including all its claims related to this suit, the '703 Patent, and "any other intellectual property right" arising prior to July 16, 2024. By the very words of the Settlement Agreement, this broad release applies to third parties beyond Amazon.

This release applies to Plaintiffs' claims against Defendants because Defendants, as operators of an Amazon e-commerce store, are "users" of Amazon. In order to sell products on Amazon, every seller must agree to be bound by Amazon's terms and conditions, including its policies and procedures applicable to sellers. (Mot. Summ. J., Dkt. 92-1, at 5 & n.1). As sellers on Amazon, all parties accepted and are bound by the terms of the Amazon Services Agreement. (Dkt. 88-3). The Services Agreement repeatedly refers to Amazon sellers as "users" of Amazon and as "using" the Amazon website and services. (*See, e.g., id.* at 6 ("As a *user* of the services, you *use* the Amazon sites, the services, and seller central at your own risk." (emphasis added))). That both Defendants are "users" of Amazon is also corroborated by Plaintiffs' own allegations in their complaint that Defendants use the Amazon marketplace to sell their magnetic data cables. Every fact Plaintiffs allege to form the basis of their claims arise out of Defendants' use of the Amazon marketplace and Defendants' enforcement of Amazon's policies and procedures, including the APEX program. (*See generally* Am. Compl., Dkt. 96).

Plaintiffs argue that even if Lup is considered an Amazon user, Hanna cannot be considered a "user" of Amazon, and therefore, the Settlement Agreement cannot be construed to release claims

against Hanna. (Resp., Dkt. 112, at 7). However, Hanna is a party to this action individually only because Plaintiffs sued Hanna for *using* the Amazon APEX process, on behalf of his company Lup, to get Amazon to take down Plaintiffs' allegedly infringing products. There is no other basis for Plaintiffs' claims against Hanna but for his use of the Amazon services. Further, in Plaintiffs' own pleadings, they refer to both Hanna and Lup's allegedly tortious actions in using the APEX process to support their tortious interference claim. (*See* Am. Compl., Dkt. 96, ¶¶ 54–59). To find that Lup is a "user" of Amazon, but Hanna is not, would fly in the face of common sense and Plaintiffs' own pleadings.

Plaintiffs further argue that the Settlement Agreement does not reach Plaintiffs' claims against Defendants because "'there is a rebuttable presumption that parties enter a contract for their own benefit and not for the benefit of a third party' under Washington State's law." (Resp., Dkt. 112, at 7 (quoting *Wolverton v. Young*, 131 Wash. App. 1020 (2006))). Plaintiffs assert that in executing the Settlement Agreement, Plaintiffs and Amazon did not intend to make Defendants third party beneficiaries of the Agreement. (*Id.* at 8). However, this rebuttable presumption is inapplicable here because the Settlement Agreement explicitly covers a wide variety of third parties that are covered by the Agreement's release due to their relationship with Amazon. Defendants are specifically mentioned in the Agreement's definition of "Lawsuit." (Dkt. 88-1, at 1). Indeed, it is logical that in cases like this, Amazon would want to secure a broad release for third parties within its ecosystem because a release against only Amazon would be meaningless given that Amazon relies on its users—its sellers—to supply the products sold on Amazon. If Defendants were not released from Plaintiffs' claims and could not sell their allegedly infringing products, then Amazon would also be unable to sell those products without risking being sued once again. In executing its Settlement Agreement with Plaintiffs, Amazon bargained for and gained a benefit not only for itself but also its

users. Contrary to Plaintiffs' assertions, Defendants are exactly the type of user that Amazon intended, and did, protect with its release.

Without express language in the Agreement, Plaintiffs cannot claim that they intended to carve out Defendants from their release. Such a claim regarding Plaintiffs' subjective intent is not supported by the text of the Agreement itself and not relevant under Washington law. *See Go2Net, Inc.*, 60 P.3d 1245 (explaining that parties may not use extrinsic evidence to demonstrate a party's subjective intent as to the contract's meaning). Because both Hanna and Lup are users of Amazon and the Settlement Agreement released all Plaintiffs' claims against Amazon users, the Settlement Agreement's broad release of claims applies to Plaintiffs' claims against Defendants.

Next, Plaintiffs argue that by filing an amended complaint, they have mooted Defendants' motion for summary judgment. (Resp., Dkt. 112, at 5). The Court disagrees. The amended complaint maintains one claim that was also brought in the original complaint—the declaratory judgment claim that the '881 Patent is invalid as anticipated by certain prior art references. (*Compare* Compl., Dkt. 1, ¶¶ 29–31 *with* Am. Compl., Dkt. 96, ¶¶ 46–52). Because this claim is the same across both complaints and pertains to actions that occurred prior to the Effective Date of the Settlement Agreement, this claim was released by the Agreement. Plaintiffs' amended complaint differs from their original complaint in three regards: (1) it adds a claim for a declaratory judgment on the basis that the '881 Patent is unenforceable due to inequitable conduct; (2) it drops Plaintiffs' claim of patent infringement of the '703 Patent against Defendants; and (3) as to the tortious interference claims, it adds reference to APEX complaints that Defendants filed with Amazon after this suit commenced. (*See* Dkt. 96). The claim for inequitable conduct, while newly raised in the amended complaint, also refers to actions that occurred during the prosecution of the '881 Patent—well before the Effective Date of the Settlement Agreement. Therefore, it too was released by the Agreement. Finally, the bulk of the actions that form the basis of Plaintiffs' tortious interference

claim are the same across complaints and refer to actions—APEX complaints—filed before the

Effective Date of the Settlement Agreement. These claims too were released and unaffected by the

filing of the amended complaint. In sum, the filing of the amended complaint did not moot

Defendants' motion for summary judgment because almost all the claims in the amended complaint

were released by the Settlement Agreement because they refer to actions that occurred before July

16, 2024. Accordingly, Defendants are entitled to summary judgment on those released claims.[2]

The only claim not affected by the Settlement Agreement is Plaintiffs' claim for tortious

interference based on Defendants' APEX complaints that were filed after July 16, 2024—complaints

filed on or about July 18, 2024, and October 22, 2024. (*See* Resp., Dkt. 112, at 1–2; *see also* Exs. A

and B). The tortious interference claim based on these actions is not released under the Agreement

because the Agreement explicitly releases only claims that arose prior to the Effective Date of the

Agreement. (*See* Dkt. 88-1, ¶ 4). However, Defendants argue that Plaintiffs have no cognizable legal

claim based on these APEX filings because Amazon has refused to initiate proceedings based on

these complaints. (Reply, Dkt. 111, at 5). The Court agrees. Defendants provide correspondence

from Amazon in which Amazon indicates that it will not initiate APEX proceedings based on these

complaints nor delist Plaintiffs' ASINs listed on these APEX complaints due to the pendency of this

case. (Dkts. 107-1, 107-2). Plaintiffs have suffered no harm from Defendants' post-settlement

APEX requests, and thus Plaintiffs do not have standing to assert a tortious interference claim—or

any claims—based on these APEX requests because they have suffered no injury from Defendants'

filing of them. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that standing

requires showing that a party suffered an "injury in fact" that is "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical") (cleaned up). Accordingly, Plaintiffs' tortious

---

[2] To the extent that the motion for summary judgment is moot because it was filed before Plaintiffs filed their amended complaint, the Court construes Defendants' reply in support of their summary judgment, (Dkts. 107, 111-1), as a renewed motion for summary judgment and grants that motion according with this Order.

interference claim based on Defendants' post-settlement APEX requests must be dismissed without prejudice for lack of subject matter jurisdiction. *See Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) (explaining that a district court must consider subject matter jurisdiction *sua sponte* to ensure that it has jurisdiction over the claims before it); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment, (Dkt. 88, 92-1), is **GRANTED IN PART**. Defendants are entitled to summary judgment on Plaintiffs' two declaratory judgment claims listed in their amended complaint. Defendants are also entitled to summary judgment on Plaintiffs' tortious interference claim to the extent that it relies on actions that occurred before July 16, 2024. Plaintiffs' tortious interference claim that is based on actions after July 16, 2024, is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Defendants' letter motion for leave to file a motion for summary judgment, (Dkt. 67), Defendants' motion to dismiss, (Dkt. 104), and Defendants' motion for a hearing, (Dkt. 116), are **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for preliminary injunction, (Dkt. 24), is also **MOOT**.

The only remaining claim in this case is Lup's counterclaim against Plaintiffs for infringement of the '881 Patent.

**SIGNED** on January 27, 2025.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE