IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WENYONG YUE, et al., | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| v. | § | 1:24-CV-1125-RP |
| | § | |
| REACTION LABS, LLC a/k/a Lup, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |
| | § | |

## ORDER

Before the Court is Counter-Defendants Wenyong Yue ("Yue"), Huizhoushi Huifangyuan

Nongye Keji Youxian Gongsi a/k/a Botail ("Botail"), and yidiandian Shenzhen

wenhuachuanmeiyouxiangongsi a/k/a Cool Essential's ("Cool Essential") (collectively, "Counter-

Defendants") Motion for Wrongful Injunction Damages. (Dkt. 153). Counter-Plaintiff Reaction

Labs LLC a/k/a Lup ("Lup") filed a response in opposition, (Dkt. 156), and Counter-Defendants

replied, (Dkt. 158). Also before the Court is Counter-Defendants' Emergency Motion to Vacate the

Preliminary Injunction, (Dkt. 159), and Lup's response in opposition, (Dkt. 160). Having considered

the parties' briefs, the record, and the relevant law, the Court issues the following order.

## I. BACKGROUND

This case began as a dispute between owners of two different patents for magnetic data

cables. Yue is the owner of the U.S. Patent No. 11,756,703 ("the '703 Patent"), which disclosed a

magnetic data cable. (Am. Compl., Dkt. 96, ¶ 1; *see also* Ex. A, Dkt. 96-1). Botail and Cool-Essential

are China-based companies that operate Amazon stores to sell magnetic data cables to U.S.

consumers under a license to the '703 Patent from Yue. (*Id.* ¶¶ 2–3). Lup is a Texas-based company,

owned by John Nashed Hanna ("Hanna"), that operates an Amazon store which also sells magnetic

data cables. (Defs.' Answer, Dkt. 55, ¶¶ 4–5). Lup is also the current owner and assignee of U.S.

Patent No. 11,972,881 ("the '881 Patent"), which also disclosed a magnetized cable. (*Id.* ¶¶ 4–5, 58; *see also* Ex. B, Dkt. 96-2).

In May 2024, Lup filed numerous complaints through the Amazon Patent Evaluation Express Program ("APEX") against over 80 Amazon listings belonging to Cool Essential and Botail. (*See* Order, Dkt. 128, at 2). Amazon then removed the allegedly infringing listings. (*Id.*). In response, on June 15, 2024, Counter-Defendants initiated this litigation by filing suit against Lup and Hanna on multiple grounds, including infringement of the '703 Patent. (Dkt. 1; *see also* Am. Compl., Dkt. 96).[1] Lup and Hanna answered Counter-Defendants' claims, and Lup, alone, counterclaimed for infringement of the '881 Patent. (Dkt. 55).

Both parties filed cross-motions for preliminary injunctions. (Dkts. 24-1, 57). On December 13, 2024, the Court issued an order granting in part Hanna and Lup's motion for summary judgment, (Dkt. 88). (Order, Dkt. 122; *see also* Order, Dkt. 141). The Court found that Hanna and Lup were entitled to summary judgment on most of Counter-Defendants' claims against them and dismissed all of Counter-Defendants' claims. The Court accordingly denied as moot Counter-Defendants' motion for a preliminary injunction. (*Id.*).

As for Lup's remaining counterclaim, the Court held a hearing on its motion for a preliminary injunction on December 5, 2024. (Min. Entry, Dkt. 119). At the hearing, the Court considered arguments from counsel on the parties' various filings related to Lup's motion. At the end of the hearing, the Court ordered Lup to file a proposed order granting the motion, which would include the specific Amazon Standard Identification Numbers ("ASINs") that Lup wished to be enjoined. (*Id.*). The day after the hearing, Lup filed a proposed order that contained the ASINs for the accused listings. (Dkt. 120). Counter-Defendants did not respond to Lup's proposed order.

---

[1] Since the initiation of this litigation, all claims of the '703 Patent have been found to be invalid after a third party requested, and the United States Patent and Trademark Office initiated, a reexamination of the '703 Patent. (*See* May 20, 2025 Final Office Action, Dkt. 160-1).

On December 17, 2024, the Court entered an order granting Lup's motion and issued a preliminary injunction against Counter-Defendants. (Order, Dkt. 128; *see also* Am. Order, Dkt. 130). The Court found that Lup had shown that it was likely to succeed on its claim that Counter-Defendants were infringing the '881 Patent. (*Id.* at 6–7). The Court also found that Counter-Defendants had failed to present any persuasive evidence that the '881 Patent is invalid due to inequitable conduct, the priority of the '703 Patent, or other prior art. As such, the Court found that Lup was likely to succeed on the issue of validity and the merits of its claim. (*Id.* at 12). After finding that the other preliminary injunction factors favored Lup, the Court issued an injunction barring Counter-Defendants from making, importing, or selling the accused products—specifically those sold through the ASINs identified by Lup in its proposed order. (*Id.* at 19). In issuing its injunction, the Court required Lup to post a bond in the amount of $25,000. (*Id.* at 20). Lup complied by depositing $25,000 with the Clerk of the Court. (Dkts. 131, 132).

On December 22, 2024, Counter-Defendants filed a Notice of Appeal challenging both the dismissal of their claims and the Court's order granting Lup's motion for a preliminary injunction. (Dkt. 133). On January 10, 2025, their appeal was formally docketed at the Federal Circuit. *Yue v. Hanna*, 25-1356 (Fed. Cir. 2025). That appeal remains pending.

On April 11, 2025, Counter-Defendants filed a Petition for Reexamination of the '881 Patent before the United States Patent and Trademark Office ("USPTO"). (Dkt. 159-5). The petition asserted that reexamination was warranted based on nine substantial new questions of patentability. (*Id.*). On May 1, 2025, the USPTO instituted reexamination of the five independent claims of the '881 Patent on five of the nine grounds asserted in Counter-Defendants' petition. (Dkt. 159-2, at 8–16). The USPTO did not grant the reexamination request for the dependent claims and did not grant the request for the independent claims based on substantial new questions of patentability 1, 2, 3, and 9. (*Id.*).

Counter-Defendants have filed two motions for relief from the Court's preliminary injunction. In their Motion for Wrongful Injunction Damages, Counter-Defendants argue that four ASINs were improperly enjoined as part of the Court's injunction, and accordingly they request damages for lost sales. (Dkt. 153). Counter-Defendants also filed a Motion to Vacate the Preliminary Injunction based on the USPTO's decision to institute a reexamination proceeding against the '881 Patent. (Dkt. 159). The Court will address each motion in turn.

## II. MOTION FOR WRONGFUL INJUNCTION DAMAGES

Counter-Defendants first ask the Court to award them damages for allegedly being wrongfully enjoined from selling their products through four Amazon listings. (Dkt. 153). They allege that the four ASINs identified in their motion[2] sell non-magnetic data cables that have magnetic connectors, which are unrelated to the magnetic data cables found to be infringing the '881 Patent. (*Id.*). Counter-Defendants claim that Lup "wrongfully locked down [the] four unrelated ASINs" and "took no action to reverse their wrongful restraint" once Counter-Defendants communicated with Lup about this issue. (*Id.*). Lup argues that the motion for damages should be denied because Counter-Defendants have not shown that the four ASINs do not sell infringing products. (Dkt. 156).

The Court finds that the motion for wrongful injunction damages should be denied as premature. In asking for wrongful injunction damages, Counter Defendants are implicitly asking the Court for multiple forms of relief: (1) find that the Court should amend its preliminary injunction to omit the four ASINs because they do not sell infringing products; and (2) find that Counter-Defendants are entitled to damages. Counter-Defendants' motion is deficient because it skipped the first, necessary inquiry and proceeded immediately to the second. Even as to the second inquiry, Counter-Defendants have not made the required showing for their requested damages.

---

[2] Those four ASINs are: B0D6YQCWWC, B0D6YQX1YM, B0D6YRWWVR, and B0D6YRHGS.

In Counter-Defendants' motion, they repeatedly place blame on Lup for not releasing the four ASINs from the injunction after Cross-Defendants represented to Lup that the four ASINs sell non-infringing products. (*See* Dkt. 153, at 2). However, these four ASINs are locked down not because Lup has failed to ask Amazon to un-freeze the listings but because the Court's preliminary injunction order enjoined the sales of products from these listings. In issuing its preliminary injunction order, the Court relied upon Lup's infringement analysis which included an element-by-element analysis for two representative products, comparing them to Claim 1 of the '881 Patent. (*See* Order, Dkt. 128, at 6–7 (citing Dkts. 57, 57-1)). The Court also relied upon Lup's list of infringing products and the corresponding ASINs. (*Id.* (citing Dkts. 57-2, 120-1)). Counter-Defendants never rebutted the infringement analysis or contested that Lup's list of accused products included products that were non-infringing. (*See id.*). Therefore, Counter-Defendants' first step in seeking wrongful injunction damages must be to request that the Court reconsider or amend its preliminary injunction so that the injunction can be lifted as to the four ASINs.

Such a motion would need to be filed pursuant to Federal Rule of Civil Procedure 54(b). *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ("Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.") (cleaned up). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (cleaned up).

Counter-Defendants have yet to argue why the preliminary injunction should be amended pursuant to Rule 54(b). Instead, all Counter-Defendants state is that the four ASINs sell non-magnetic data cable products. (Dkt. 153, at 1). This assertion is supported by a brief statement in an affidavit by Yue. (Yue Aff., Dkt. 153-2, ¶ 5). However, Counter-Defendants do not provide any

technical detail to substantiate its allegation that these products should not properly be subject to the preliminary injunction. Lup has repeatedly requested that Counter-Defendants provide such substantiation and has indicated that if Counter-Defendants can substantiate their claims that these four ASINs should not be enjoined, it would consider agreeing to a modification of the preliminary injunction order. (Dkt. 156, at 2–3). Lup asserts that Counter-Defendants "are in the best position to provide the factual support for its position." Without confirmation that these products do not fall under the injunction, Lup argues that amendment of the injunction is premature. (*Id.* at 3). In their reply, Counter-Defendants argue that the burden should be on Lup to prove that the four ASINs infringe the '881 Patent because plaintiffs have the burden to prove infringement in patent cases. (Dkt. 158, at 1). In any event, Counter-Defendants argue that the Yue affidavit proves that the four ASINs sell non-magnetic data cable products not related to the present litigation. (*Id.* at 2).

The Court agrees with Lup. Although it is true that plaintiffs bear the burden of proving patent infringement in the first instance, we are now in a different procedural posture. The Court has already found that Lup had met its burden in proving it was likely to succeed on the merits of its infringement claim. The issue now is whether the Court should amend its order, and on that issue, Counter-Defendants bear the burden under Rule 54(b) to persuade the Court that there is a sufficient reason to amend its order. Counter-Defendants have not yet done so. Yue's affidavit, alone, does not sufficiently demonstrate that the four ASINs sell non-infringing products. In its response, Lup provides screenshots from a cursory internet search which suggests that some of the ASINs may sell infringing products. (*See* Dkt. 156, at 3). Yue's brief assertion in his affidavit does not dispel the doubt raised in these searches as to the nature of the products that the ASINs sell. Counter-Defendants may refile their motion, providing more detail to substantiate their claim that the four ASINs sell non-infringing products. If they do so, they should also make a fuller argument as to why the Court should amend its order under Rule 54(b).

Once Counter-Defendants make a showing that the preliminary injunction should be amended and the four ASINs should not be further enjoined, only then can the Court address the second issue: whether the enjoinment of those ASINs was wrongful and whether Counter-Defendants are entitled to damages from Lup because of this wrongful enjoinment. Counter-Defendants' motion is also deficient on this issue for two reasons.

First, Counter-Defendants do not provide an adequate legal standard by which the Court could judge whether they are entitled to wrongful injunction damages.[3] Federal Rule of Civil Procedure 65(c) states, in relevant part: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Rule itself only implies "that when a party has been wrongfully enjoined, it may collect some or all of the security." *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 20 (1st Cir. 2007). The Rule "does not explicitly address when an enjoined party may recover on a bond, nor does it indicate whether and to what extent a district court has discretion to deny damages." *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 603 (3d Cir. 2019).

On the first issue, many circuit courts of appeal have determined that "a party is wrongfully enjoined when it turns out that that party had a right all along to do what it was enjoined from

---

[3] Counter-Defendants provide a citation to *National Collegiate Athletic Association, et al. v. New Jersey Thoroughbred Horsemen's Association, Inc.* and allege that in the case: "The U.S. Supreme Court has defined 'wrongfully enjoined' as [sic] 'that a party is wrongfully enjoined when it turns out that that party had a right all along to do what it was enjoined from doing.'" (Dkt. 153, at 2). However, this case was not decided by the Supreme Court. A writ of certiorari was filed in the case, which was later denied. *See* 140 S. Ct. 2764 (Mem) (2020). Instead, the Court assumes that Counter-Defendants were referring to the case as it was decided by the Third Circuit, before a writ of certiorari was filed. *See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 603 (3d Cir. 2019). At best, Counter-Defendants' representation that the Supreme Court had set a legal standard for wrongful injunction damages in *National Collegiate Athletic Association* is a mistake. At worst, it is a misrepresentation—one that would be in line with other misrepresentations that Counter-Defendants have made to this Court. *See infra* Section IV.

doing." *Id.* (collecting cases). On the second issue—whether and to what extent a district court has

discretion to deny bond damages—there is a circuit split. A majority of circuits have held that there

is a rebuttable presumption that a wrongfully enjoined party is entitled to recover provable damages

up to the bond amount. *See id.* at 606–07 (collecting cases). Courts that apply the rebuttable

presumption find that courts retain discretion to deny damages based on certain factors, including,

but not limited to, a defendant's failure to mitigate damages, the reasonableness of the damages

sought, the outcome of the underlying suit, and the parties' resources. *Id.* at 608 (citing *Coyne-Delany*

*Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983) and then citing *Nokia Corp.*

*v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011)).

However, the Fifth Circuit has held, "The awarding of damages pursuant to an injunction

bond rests in the sound discretion of the court's equity jurisdiction." *H&R Block, Inc. v. McCaslin*,

541 F.2d 1098, 1099 (5th Cir. 1976). But the Fifth Circuit's position on this issue may have changed

in a more recent opinion. *See Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) (stating

that Rule 65(c)'s requirement of a bond "assures the enjoined party that it may readily collect

damages from the funds posted or the surety provided in the event that it was wrongfully enjoined,

without further litigation and without regard to the possible insolvency of the assured"); *see also Nat'l*

*Collegiate Athletic Ass'n*, 939 F.3d at 607–08 (discussing the interplay between *H&R Block* and

*Continuum Co.*). Counter-Defendants have not explained which standard the Court should use to

resolve its motion—whether the Court has limited or full discretion in determining the extent of

damages, if any, Counter-Defendants are entitled to. If Counter-Defendants refile their motion, they

should grapple with the competing standards and the issue of whether this Court is still bound by

the Fifth Circuit's holding in *H&R Block*.

Under either standard, Counter-Defendants must also demonstrate the reasonableness of the

damages sought. Counter-Defendants have provided a chart showing their alleged lost daily sales

from each ASIN. (Yue Aff., Dkt. 153-2, ¶ 7). However, assuming this chart is an accurate approximation of lost sales, there may be a reason to deny or reduce the requested damages. As mentioned above, at the end of the preliminary injunction hearing, the Court ordered Lup to file a proposed order granting the motion, which would include the specific ASINs that Lup wished to be enjoined. The day after the hearing, on December 10, 2024, Lup did just that—it filed a proposed order that contained the ASINs for the accused listings on Amazon. (*See* Dkts. 120, 120-1). The Court did not issue its preliminary injunction order until December 17, 2024—one week later. During that week, Counter-Defendants did not file a notice indicating that the four ASINs now at issue should not be included in the Court's order, should the Court grant the injunction. Nor did Counter-Defendants ask that the Court's preliminary injunction order be amended to remove these ASINs until the present motion was filed on April 5, 2025—four-and-a-half months after the Court issued its order. Either omission could constitute a failure for Counter-Defendants to mitigate their damages. On that basis, the Court could choose to reduce the requested damages award or choose not to award damages at all, should the Court find that Counter-Defendants were wrongfully enjoined. If Counter-Defendants refile their motion, they should address the reasonableness of the damages requested and whether those requested damages should be reduced due to a failure to mitigate.

In summary, Counter-Defendants' motion for wrongful injunction damages is premature for a number of reasons. Counter-Defendants have failed to take the prerequisite step of asking the Court to amend its preliminary injunction order to remove the four ASINs at issue. If they make that request in the future, Counter-Defendants must provide more evidence to substantiate their claim that the four ASINs do not sell infringing products. Even assuming that Counter-Defendants can make the requisite showing that the injunction should be amended, they have not yet carried their burden in showing that they are entitled to wrongful injunction damages. They have not

explained what legal standard the Court should use to consider whether they are entitled to damages, nor have they discussed whether their requested amount is reasonable in light of a potential failure to mitigate. As such, the Court denies Counter-Defendants' motion for wrongful injunction damages without prejudice to refiling to address the preceding deficiencies.[4]

### III. MOTION TO VACATE THE PRELIMINARY INJUNCTION

The Court now turns to Counter-Defendants' second motion—their motion to vacate the preliminary injunction entirely because the USPTO has instituted reexamination of the five independent claims of the '881 Patent. (Dkt. 159). The USPTO instituted reexamination based on five substantial new questions of patentability ("SNQs"),[5] which raise the possibility that various prior art references may have anticipated the independent claims of the '881 Patent. (*See* 159-2, at 11–19). Counter-Defendants argue that these SNQs are persuasive evidence that the '881 Patent is invalid. (Dkt. 159-1, at 4).

Rule 54(b) governs Counter-Defendants' motion. "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin*, 864 F.3d at 336 (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the

---

[4] In a refiled motion, Counter-Defendants should also address this Court's jurisdiction to amend its preliminary injunction order, given the pending appeal to the Federal Circuit. As discussed *infra*, a court's jurisdiction over a preliminary injunction is limited while an appeal of that order is pending before a circuit court of appeals.

[5] To order reexamination, the Patent Office must identify a "substantial new question of patentability." 35 U.S.C. § 303(a); *see also In re Vivint, Inc.*, 14 F.4th 1342, 1348 (Fed. Cir. 2021).

absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

Counter-Defendants' motion is unavailing for two reasons. First, the Court does not have jurisdiction to dissolve the preliminary injunction. "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case." *Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (citing *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817 (5th Cir. 1989)). The Fifth Circuit applies this rule in the context of a preliminary injunction that is simultaneously attacked in the appellate court and the issuing district court.[6] *See Coastal Corp.*, 869 F.2d at 819 (citing Fed. R. Civ. P. 62(c)).[7] In *Coastal*, the Fifth Circuit vacated a district court order dissolving a preliminary injunction while a coextensive appeal related to the same preliminary injunction was pending. *Id.* In its analysis, the Fifth Circuit considered Federal Rule of Civil Procedure 62's authorization regarding a district court's "limited injunctive powers during the pendency of an appeal." *Id.* The court noted that Rule 62 "authorizes the suspension, modification, restoration or grant of injunction, not the dissolution of an injunction already granted" and emphasized that "[t]he omission of 'dissolutions' appears to indicate a limit on the district court's power to modify an injunction pending appeal." *Id.*

For these reasons, a notice of appeal typically divests the district court of jurisdiction over the judgment or order appealed. *Id.* at 820 (quoting *Griggs*, 459 U.S. at 58). "[O]nce a party has filed an appeal of a district court's order granting an injunction, the district court no longer has any

---

[6] "On procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit, the law of the regional circuit shall be applied." *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1188 n. 2 (Fed. Cir. 1996).
[7] Since the *Coastal* ruling, Federal Rule of Civil Procedure 62 has been amended, and the relevant provision is now Rule 62(d). The meaning of the rule has not changed.

authority to amend or vacate the order." *Id.* The district court's jurisdiction over an injunction

pending appeal is limited to "maintaining the status quo." *Id.* Here, Counter-Defendants' appeal of

the preliminary injunction order has divested this Court of the jurisdiction to dissolve the

preliminary injunction. For this reason, Counter-Defendants' motion is denied.

Even assuming the Court had jurisdiction, Counter-Defendants' motion fails on the merits.

To obtain an injunction against the sale of an allegedly infringing product, a patent owner must

show a likelihood of success on the merits—that he "will likely prove" infringement, as well as

irreparable harm if the injunction does not issue. *PHG Tech., LLC v. St. John Companies, Inc.,* 469 F.3d

1361, 1365 (Fed. Cir. 2006). Patents are presumed valid and enforceable, and the burden of

establishing invalidity or unenforceability rests on the challenger. 35 U.S.C. § 282. At trial, to

overcome this presumption, "the party challenging a patent must prove facts supporting a

determination of invalidity by clear and convincing evidence." *Schumer v. Lab. Computer Sys.,* 308 F.3d

1304, 1315 (Fed. Cir. 2002). At the preliminary injunction stage, however, "the trial court does not

resolve the validity question but rather must . . . make an assessment of the persuasiveness of the

challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial."

*New England Braiding Co. v. A.W. Chesterton Co.,* 970 F.2d 878, 882–83 (Fed. Cir. 1992). Thus, in

resolving a motion for a preliminary injunction, a potential infringer has the burden, not of proving

invalidity by clear and convincing evidence, but of showing a "substantial question of invalidity."

*PHG Tech.,* 469 F.3d at 1365.

The bulk of Counter-Defendants' motion does no more than reference the USPTO's

Decision on Request for Reexamination. However, the Federal Circuit has found that a "grant by

the examiner of a request for reexamination is not probative of unpatentability." *Hoechst Celanese*

*Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1584 (Fed. Cir. 1996). While a grant of a reexamination request

may "surely [be] evidence that the criterion for reexamination has been met (i.e., that a 'substantial

new question of patentability' has been raised, 35 U.S.C. § 303), [it] does not establish a likelihood of patent invalidity." *Id.* Indeed, the most recent data—published by the USPTO on September 30, 2024—shows that while 92.6% of all reexamination requests since 1981 were granted, the vast majority of the time, in over 85% of proceedings, the reexamined patents emerged out of reexamination wholly or partially intact.[8] Therefore, the mere institution of a reexamination does not—by itself—suggest a likelihood of success on the merits of an invalidity defense. *See, e.g., Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 793–794 (S.D. Tex Sep. 27, 2010) (excluding evidence of USPTO reexamination files for the purposes of proving invalidity at the summary judgment stage because "there is . . . no probative value on the issue of invalidity due to the differing standards applied in reexamination and in this litigation"); *see also Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2008 WL 906330, at *3 (E.D. Tex. Mar. 31, 2008) (granting a preliminary injunction and finding the plaintiff likely to succeed on the issue of validity where the alleged infringer provided no evidence of invalidity "beyond pointing to the reexamination request"). Therefore, here, the USPTO's decision to institute a reexamination proceeding on the '881 Patent in this case is not, by itself, sufficient evidence to warrant a dissolution of the preliminary injunction.[9]

In summary, the Court lacks jurisdiction to dissolve its preliminary injunction while Counter-Defendants' appeal of the injunction remains pending before the Federal Circuit. Even if the Court were to consider the motion on the merits, the USPTO's decision to institute a

---

[8] *See* U.S. Pat. & Trademark Off., *Ex Parte* Reexamination Filing Data 2 (Sept. 30, 2024), https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf (noting in section 8 that, overall, all claims are cancelled in reexamination only 14.1% of the time).

[9] Additionally, the SNQs identified by the USPTO involve claims that various prior art references anticipated the '881 Patent. The references identified in these SNQs were already brought to the Court's attention, in a cursory fashion, prior to the Court issuing the preliminary injunction. Counter-Defendants' motion, thus, raises no new art for the Court to consider. Further, as they failed to do during resolution of the preliminary injunction motion, Counter-Defendants' instant motion continues to be deficient because it fails to provide a substantive claim-by-claim analysis by which the Court could assess the strengths of Counter-Defendants' arguments regarding the prior art.

reexamination of the '881 Patent alone is not probative evidence of the invalidity of the patent.[10] Accordingly, the Court denies Counter-Defendants' motion to vacate the preliminary injunction.

## IV. ORDER TO SHOW CAUSE

Having resolved Counter-Defendants' motions, the Court addresses one additional matter: numerous misrepresentations made by Counter-Defendants in their Motion to Vacate the Preliminary Injunction. The Court lays out the misrepresentations the Court has identified before turning to the next steps in addressing these misrepresentations.

### A. Counter-Defendants' Misrepresentations

1. Statements on What Grounds the USPTO Granted Reexamination

Repeatedly in their motion, Counter-Defendants make statements suggesting that the USPTO has instituted reexamination of the '881 Patent based on all nine SNQs proposed by Counter-Defendants in their petition for reexamination. However, this is not true. In its institution decision, the USPTO explicitly rejected four of Counter-Defendants' SNQs: SNQ 1, SNQ 2, SNQ 3, and SNQ 9. (*See* Dkt. 159-2, at 11–13, 16).[11] On this point, the Court identifies the following statements as misrepresenting the USPTO's decision:

- "On May 1, 2025, the United States Patent and Trademark Office issued an Order Granting Request for Ex Parte Reexamination . . . based on nine independent grounds of substantial new issues of patentability of the patent-in-suit, U.S. Patent No. 11,972,881 ("the '881 Patent.) . . . ." (Dkt. 159-1, at 1).

- "The USPTO Decision specifically found the following NINE independent grounds for SNQs." (*Id.* at 2).

---

[10] Counter-Defendants provide one additional ground to vacate the injunction apart from the USPTO's institution decision: an alleged "prior public disclosure of the Yue cable." (Dkt. 159-1, at 10). However, Counter-Defendants admit that this too "was presented to this Court at the PI hearing and in Dkt. No. 118-2)." *Id.* Additionally, Counter-Defendants again fail to provide a substantive, claim-by-claim analysis by which the Court could assess whether the "Yue cable" anticipated the '881 Patent. Accordingly, the Yue cable is not a basis to vacate the preliminary injunction.

[11] In its response to Counter-Defendants' Motion to Vacate the Preliminary Injunction, Lup also pointed out that Counter-Defendants had made multiple misrepresentations regarding the USPTO's decision. (*See* Dkt. 160, at 7–8).

- "The USPTO Decision Raised Nine Substantial New Questions of Patentability Over The '881 Patent" (*Id.* at 4) (section header A).

- "[Counter-Defendants] respectfully submit that each of the nine SNQs raised in the USPTO Decision against the '881 Patent is persuasive evidence to vacate the PI . . . ." (*Id.* at 4).

### 2. Statements Regarding SNQ 1

Counter-Defendants also made specific misrepresentations regarding the USPTO's analysis of the four rejected SNQs. In SNQ 1, Counter-Defendants claimed that Claims 1 and 2 of the '881 Patent are unpatentable due to Counter-Defendants' '703 Patent, which was found to be invalid in a separate reexamination proceeding (hereinafter, "the Related Action"). (*See* Dkt. 159-2, at 9, 11). Counter-Defendants argue that any prior art used to invalidate the '703 Patent must be applicable to invalidate the '881 Patent because they both allegedly claim the same invention. (Dkt. 159-1, at 5). In their motion, Counter-Defendants state, "The USPTO Decision cited the Related Action to raise SNQ 1 that Claims 1 and 2 of the '881 Patent are unpatentable." (*Id.*). They lay out the reasoning behind SNQ 1 and represent: "The USPTO Decision correctly followed those long established patent law principles to conclude that the Related Action raised a substantial new issue of patentability against the '881 Patent." (*Id.*).

However, the USPTO concluded the opposite. In its decision, the USPTO stated the following: "[T]he Related Action is not prior art and a reasonable examiner would not look at the Related Action when deciding the patentability of claims 1-18 of the '881 Patent. Thus, the reasoning presented in SNQ 1 cannot serve as a basis for an SNQ." (Dkt. 159-2, at 11). Contrary to Counter-Defendants' assertions, the USPTO did not accept their reasoning behind SNQ 1 and did not find that the reasoning raised a substantial new question of patentability. Accordingly, the above statements in reference to SNQ 1 were misrepresentations.

### 3. Statement Regarding SNQ 2

Moving to SNQ 2, in their motion, Counter-Defendants state:

> The USPTO Decision raised SNQ 2 and that Claims 1, 2, 6, 7, and 9 are unpatentable under 35 U.S.C. §102(a)(1) by the underlying '881 Patent, in particular, at least Fig. 1 because that figure shows a "MutecPower Data Cable," which is argued to be previously known.

(Dkt. 159-1, at 5–6). However, the USPTO did not find a substantial new question of patentability

on this basis. Instead, the USPTO found:

> [A] reasonable examiner would not look at any part of the disclosure of the underlying '881 Patent as prior art beyond what was already considered during the original examination when determining the patentability of the claims, and thus, the reasoning presented in SNQ 2 cannot serve as a basis for an SNQ.

(Dkt. 159-2, at 12). Contrary to Counter-Defendants' assertions, the USPTO did not find that there

was a substantial new question of patentability due to the reasoning in SNQ 2. Accordingly,

Counter-Defendants' assertion in reference to SNQ 2 was a misrepresentation.

### 4. Statement Regarding SNQ 3

Counter-Defendants made a similar misrepresentation regarding SNQ 3: "The USPTO

Decision raised SNQ 3 and that Claims 1, 2, 6, 7, and 9 are unpatentable over the MutecPower Data

Cable Amazon.com listing." (Dkt. 159-1, at 6). However, regarding SNQ 3, the USPTO found the

following: "[T]he reasoning presented in SNQ 3 cannot serve as a basis for an SNQ." (Dkt. 159-2, at

13). Accordingly, Counter-Defendants' assertion in reference to SNQ 3 was also a

misrepresentation.

### 5. Statements Regarding SNQ 9

In SNQ 9, Counter-Defendants argued that claims 1-18 of the '881 Patent are unpatentable

due to a lack of written description and lack of enablement under 35 U.S.C. § 112(a). (Dkt. 159-2, at

16). Counter-Defendants made a similar argument in its response to Lup's motion for a preliminary

injunction. (Dkt. 68, at 11–12). The Court addressed this argument in its preliminary injunction

order and found it unpersuasive. (Am. Order, Dkt. 130, at 9–10).

In its instant motion to vacate the injunction, Counter-Defendants state: "The USPTO

Decision raised SNQ 9 and held that Claims 1-18 are unpatentable under 35 U.S.C. §112(a)(1) for

lack of enablement and written description." (Dkt. 159-1, at 9). Counter-Defendants went further to

represent: "[Counter-Defendants] raised the same issues of lack of enablement and written

description in their Opposition to [Lup's] Motion for Preliminary Injunction [] and the USPTO

decision confirmed the correctness of the [Counter-Defendants'] arguments." (*Id.*).

These statements are not true. In its decision, the USPTO found that Counter-Defendants'

argument in SNQ 9 was "not persuasive . . . because SNQs cannot be based on a purported failing

of section 112(a)." (Dkt. 159-2, at 16). The decision went on to state: "As a result, any SNQ based

on an argued failing of section 112 is not a proper basis for an SNQ." (*Id.*). In other words, the

USPTO did not "confirm[] the correctness" of Counter-Defendants' section 112 argument. To the

contrary, the USPTO rejected this argument and did not institute reexamination based on this

reasoning. Accordingly, Counter-Defendants' assertions in reference to SNQ 9 were

misrepresentations.

### 6. Statements Regarding the Court Ignoring Prior Art References

Finally, even in describing the SNQs that did form the basis of the USPTO's institution

decision, Counter-Defendants made misrepresentations about the prior art that are the subject of

those SNQs. In describing the prior art references mentioned in those SNQs, Counter-Defendants

state that those references were presented to the Court at the preliminary injunction hearing but

allege that the Court is ignoring those references. For example, in describing SNQ 4, Counter-

Defendants accurately state: "The USPTO Decision raised SNQ 4 and that Claims 1, 2, 6, 7, and 9

are unpatentable under 35 U.S.C. §102(a)(1) over the CN '840 publication." (Dkt. 159-1, at 8).

However, Counter-Defendants go on to state: "The CN '840 Patent was presented to this Court on December 5, 2025 [] and likely be [sic] ignored." (*Id.*). Counter-Defendants similarly allege that the Court is ignoring the prior art references presented in SNQs 5, 6, 7, and 8:

- The CN '725 Patent was presented to this Court on December 5, 2025 [] and likely being [sic] ignored." (*Id.*) (referencing SNQ 5).

- The CN '724 Patent was presented to this Court on December 5, 2025 [] and likely being [sic] ignored." (*Id.* at 9) (referencing SNQ 6).

- The CN '348 Patent was presented to this Court on December 5, 2025 [] and likely being [sic] ignored." (*Id.*) (referencing SNQ 7).

- The [CN '921 Patent] was presented to this Court on December 5, 2025 [] and likely being [sic] ignored." (*Id.*) (referencing SNQ 8).

It is untrue that the Court has ignored these prior art references. Lup's motion for a preliminary injunction was filed on August 22, 2024, (Dkt. 56), and Counter-Defendants filed their response in opposition on September 10, 2024, (Dkt. 68). In their response, Counter-Defendants argued in a cursory fashion that the '881 Patent was invalid over prior art references, (*id.* at 6, 10), but did not provide the references as exhibits, nor did they provide a claim-by-claim analysis demonstrating how these references anticipated the '881 Patent. It was not until the day of the preliminary injunction hearing, December 5, 2024—three months later—that Counter-Defendants filed the prior art references with the Court. (*See* Dkt. 118; Min. Entry, Dkt. 119). At that time, Counter-Defendants still did nothing more than give the Court the references; they did not provide a substantive analysis explaining why those references anticipated the '881 Patent. In its preliminary injunction order, the Court considered Counter-Defendants' prior art arguments and analyzed why it found the argument unpersuasive. (*See* Am. Order, Dkt. 130, at 10–12). As the Court explained:

> To date, [Counter-Defendants] have not provided any substantive argumentation as to why the prior art references they have identified anticipate the '881 Patent elements. All [Counter-Defendants] have done in their briefs and in their recently filed "Statement of Facts" is mention several possible prior art references without analyzing how those references disclose the '881 Patent elements. But it is not the Court's duty to scour the record to find support of a party's allegations. Therefore, [Counter-Defendants'] filing of prior art exhibits without any further argumentation is insufficient to support their claim of invalidity.

(*Id.* at 11).

Counter-Defendants' allegation that the Court has ignored these prior art references is nothing more than an attempt to place the blame on the Court for Counter-Defendants' own deficient briefing on their invalidity defense. The Court's preliminary injunction order lays out why the prior art references have not been considered to the extent that Counter-Defendants might prefer. Accordingly, their allegations that the Court is ignoring these references are misrepresentations of this Court's injunction order.

### B. Discussion

A district court may impose sanctions against a party under Federal Rule of Civil Procedure 11 and under its inherent authority. Rule 11 authorizes district courts to impose an "appropriate sanction" for various forms of attorney misconduct "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1). Under Rule 11, a district court may award attorney's fees *sua sponte* under Rule 11(c)(3) after issuing an order to show cause. *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 458 (5th Cir. 2020). Additionally, a federal court has the ability to sanction a party or attorney under its inherent authority. This power includes the ability to discipline attorneys who appear before it. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Under its inherent authority, a court must determine whether the party that exhibited potentially sanctionable conduct acted in bad faith. *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

The Local Rules of the Western District of Texas also give this Court authority to discipline an attorney who appears before it. Local Rule AT-7(d). Further, the Local Rules authorize this Court to refer an attorney to the District Disciplinary Committee if it has reason to believe that an attorney has engaged in conduct that violates the Texas Disciplinary Rules of Professional Conduct or if the attorney "presents an impediment to the orderly administration of justice or the integrity of the Court. Local Rule AT-7(c)(4), (6).

Attorneys have a duty to present accurate information in their filings before the court. Federal Rule of Civil Procedure 11(b)(3) provides: "By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The Texas Disciplinary Rules of Professional Conduct, adopted as the standards of professional conduct of this Court, *see* Local Rule AT-7(a), state: "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal." Tex. Disciplinary R. Prof. Conduct 3.03(a)(1).

The Court has identified fourteen statements in Counter-Defendants' Memorandum of Law in Support of Their Emergency Motion to Vacate the Preliminary Injunction in which they misrepresented the USPTO's institution decision. Counter-Defendants' memorandum of law was signed and filed by counsel Lance Liu. The Court has permitted Mr. Liu to appear, *pro hac vice*, on behalf of Counter-Defendants in this case. (Dkt. 93). The Court has reason to believe that in submitting the memorandum of law, Mr. Liu may have violated his duty of candor pursuant to Federal Rule of Civil Procedure 11(b) and Rule 3.03(a)(1) of the Texas Disciplinary Rules of Professional Conduct. If Mr. Liu has violated either or both rules, a sanction may be warranted. Such sanctions may include: a monetary sanction, a revocation of Mr. Liu's *pro hac vice* admission, a referral to the Western District of Texas's District Disciplinary Committee, or other appropriate

relief. The Court will order Mr. Liu to show cause in writing to explain whether the misrepresentations in Counter-Defendants' Memorandum of Law violated his duty of candor and explain why he should not be subject to sanctions due to the misrepresentations. The Court will also order Mr. Liu to appear for a show cause hearing on this topic.

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that Counter-Defendants' Motion for Wrongful Injunction Damages, (Dkt. 153), is **DENIED** without prejudice to refiling.

**IT IS FURTHER ORDERED** that Counter-Defendants' Emergency Motion to Vacate the Preliminary Injunction, (Dkt. 159), is **DENIED**.

**IT IS FURTHER ORDERED** that, on or before **July 21, 2025**, Mr. Liu shall show cause in writing why he should not be subject to sanctions for the misrepresentations he presented to the Court in Counter-Defendants' Memorandum of Law in Support of Their Emergency Motion to Vacate the Preliminary Injunction.

**IT IS FINALLY ORDERED** that a show cause hearing is set for **Wednesday, July 30, 2025 at 9:00 a.m.** in Courtroom 4, on the Fifth Floor, United States Courthouse, 501 West Fifth Street, Austin, TX. Mr. Liu and counsel for Lup must appear in person for this hearing.

**SIGNED** on July 7, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE