UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Wenyong Yue, Huizhoushi Huifangyuan Nongye Keji Youxian Gongsi a/k/a Botail, and yidiandian Shenzhen wenhuachuanmeiyouxiangongsi a/k/a Cool Essential, | § | |
| *Plaintiffs*, | § | |
| v. | § | Civil Action No. 1:24-cv-01125-RP |
| John Nashed Hanna, Reaction Labs LLC a/k/a Lup, and Amazon.com, Inc., | § | |
| *Defendants*. | § | |

**RESPONSE TO PLAINTIFFS' SECOND MOTION TO VACATE PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

A. An Appeal Divests The District Court of Jurisdiction ..... 3

B. A Grant Of A Reexam Is Not Probative Of Unpatentability ..... 4

C. Presumption of Validity; Clear and Convincing Standard of Proof ..... 4

D. Legal Standard For A Motion To Dissolve A Preliminary Injunction ..... 5

IV. ARGUMENT ..... 7

A. Yue's Appeal Divested This Court of Jurisdiction ..... 7

B. Yue's Motion Does Not Present A Reasonable Challenge To Validity ..... 8

1. A Non-Final Office Action Rejecting The Claims Is Not Sufficient ..... 8

2. The Reexam Prior Art Was Already Before The Court When It Decided The PI Motion ..... 12

3. A Final Rejection of All Claims in The Reexam is Unlikely ..... 14

4. CN '921 Does Not Disclose Or Suggest The Claims ..... 15

5. Conclusion Regarding Validity ..... 20

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Federal Cases**........................................**Pages(s)**

*Ahmad v. City of St. Louis*,
995 F.3d 635 (8th Cir. 2021) ........................................6, 7

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013) ........................................6

*Anascape, Ltd. v. Microsoft Corp.*,
No. 9:06-cv-158, 2008 WL 7182476 (E.D. Tex. April 25, 2008) ........................................9

*Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*,
885 F.3d 794 (5th Cir. 2018) ........................................5, 6

*Coastal Corp. v. Texas Eastern Corp.,*
869 F.2d 817 (Fed. Cir. 1989)........................................3, 4, 8

*Cummins-Allison Corp. v. SBM Co.*,
No. 9:07-cv-196, 2009 WL 763926 (E.D. Tex. March 19, 2009) ........................................9

Cuozzo Speed Technologies, LLC v. Lee,
579 U.S. 261 (2016)........................................12

*Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.*,
906 F.2d 1059 (5th Cir. 1990) ........................................8

*DNA Genotek Inc. v. Spectrum Solutions LLC*,
No. 16-cv-1544, ECF No. 12 (S.D. Cal. Oct. 6, 2016).........................................11

*DSS Technology Management, Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018)........................................20

*Ex parte Levy*,
17 USPQ2d 1461, 1464 (Bd. Pat. App. & Inter. 1990) ........................................18

*Favia v. Indiana Univ. of Penn.*,
7 F.3d 332 (3d Cir. 1993)) ........................................6, 7

*Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*,
No. 2:06-CV-473, 2009 WL 8590962 (E.D. Tex. June 24, 2009) ...............................5, 10, 14

*Franklin Twp. V. Sewerage Auth. V. Middlesex Cnty. v. Utilities Auth.*,
787 F.2d 117 (3d Cir. 1986)........................................7

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982)....................3, 8

*Henry v. Independent American Savings Ass'n*,
857 F.2d 995 (5th Cir. 1988) ....................4

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
78 F.3d 1575 (Fed. Cir. 1996)....................4, 9, 14

*Horne v. Flores*,
557 U.S. 433 (2009)....................5

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
445 F.3d 841 (5th Cir. 2006) ....................5

*Ingenico Inc. v. IOEngine, LLC*,
136 F.4th 1354 (Fed. Cir. May 7, 2025 ....................5, 15

*In re* Rijckaert,
9 F.3d 1531, 1534, 28 USPQ2d 1955, 1957 (Fed. Cir. 1993) ....................19

*In re Schweickert*,
676 Fed. Appx. 988, 996 (Fed. Cir. 2017)....................20

*IPR Licensing, Inc. v. ZTE Corp.*,
685 F. App'x 933 (Fed. Cir. 2017) ....................20

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ....................6

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................19

*Lichtenberg v. Besicorp Grp. Inc.*,
204 F.3d 397 (2d Cir. 2000)....................6

*MILLC v. Fpusa, LLC*,
No. SA:15-CV-406-DAE, 2016 WL 6088344 (W.D. Tex. Oct. 17, 2016) ....................6, 10, 12

*New England Braiding Co. v. A.W. Chesterton Co.*,
970 F.2d at 878 (Fed. Cir. 1992)....................4, 5, 9, 15

*Personal Web Technologies, LLC v. Apple, Inc.*,
848 F. 3d 987 (Fed. Cir. 2017)....................20

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,

549 F.3d 842 (Fed. Cir. 2008)....................9, 12

*Smart Modular Tech., Inc. v. Netlist, Inc.*,
No. 2:12-cv-2319-TLN-EFB, 2013 WL 2384342 (E.D. Cal. May 30, 2013)....................11

*TAS Energy, Inc. v. Stellar Energy Am., Inc.*,
No. 8:14-cv-3145-T-30MAP, 2015 WL 6156149 (M.D. Fla. Oct. 19, 2016)....................11

*Tesco Corp. v. Weatherford Int'l, Inc.*,
750 F. Supp. 2d 780 (S.D. Tex Sep. 27, 2010)....................9, 10, 14

*Thomas v. Capital Sec. Serv., Inc.*,
812 F.2d 984 (5th Cir. 1987)....................4

*Thomas v. Capital Sec. Serv., Inc.*,
836 F.2d 866 (5th Cir. 1988)....................4

*Total Safety v. Knox,*
*4:19-CV-02719. 2019 WL 6894683 (S.D. Tex. Dec. 18, 2019)*....................5, 6, 14

*TQ Delta, LLC v. Cisco Systems, Inc.*,
942 F. 3d 1352 (Fed. Cir. Nov. 22, 2019)....................19, 20

*U.S. v. Hitchmon*,
87 F.2d 1357 (5th Cir. 1979)....................4

*United States v. Swift & Co.*,
286 U.S. 106 (1932)....................5, 14

*Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*,
97 F.4th 882 (2024)....................20

*Yue et al v. Hanna et al.*,
25-1356 (Fed. Cir. 2025)....................3

**Federal Statutes**

20 James W. Moore, *et al*., Moore's Federal Practice § 303.32 (3d ed. 1997)....................4

28 U.S.C. § 1292(a)(1)....................6

35 U.S.C. § 282....................5, 15

35 U.S.C. § 303....................4

Fed. R. Civ. Pro. 60....................3

Fed. R. Civ. Pro. 62(c) ......................................................................................................4

Defendant Reaction Labs LLC ("Lup") files this Response to Plaintiff's Yue et al. ("Yue") second *Motion To Vacate Preliminary Injunction* ("PI") (Dkt. 176, "Motion"). Yue's Motion should be denied because it makes untimely arguments Yue could have raised long ago, it ignores the Court's lack of jurisdiction to dissolve the PI, and it lacks a prima facia invalidity case.

## I. INTRODUCTION

Yue's second Motion to vacate the PI fails for multiple reasons. **First**, Yue—for the second time—impermissibly filed a Motion to Vacate this Court's Preliminary Injunction Order (the "PI Order," Dkt. 130) while its appeal of the same order is pending at the Federal Circuit. This Court has already denied Yue's first motion on this ground. Dkt. 163 at 12 ("Counter-Defendants' appeal of the preliminary injunction order has divested this Court of the jurisdiction to dissolve the preliminary injunction. For this reason, Counter-Defendants' motion is denied."). The appeal is ongoing. Although Yue filed a motion to dismiss the appeal, it is still pending. There is another pending motion before the appellate court that must be decided before the appeal can be dismissed.

**Second**, Yue's Motion relies solely on the fact that the patent office issued a first non-final preliminarily office action rejecting the claims as a matter of course. Contrary to Yue's argument, binding precedent accords the mere grant of a reexam no probative weight regarding patentability. This Court has already acknowledged this fact. Dkt. 163 at 13–14 ("the USPTO's decision to institute a reexamination of the '881 Patent alone is not probative evidence of the invalidity of the patent."). Further, even when claims have been invalidated in a preliminary non-final office action, Texas Courts accord such a PTO decision no probative weight regarding patentability because of the different standards of proof applicable in proceedings before the PTO and in court.

**Third**, Yue Motion fails to aver that the primary reference, Chinese Patent Document CN113674921 A ("CN '921"), has already been specifically evaluated and rejected by this Court

multiple times, including in granting the PI in the first place, and again in its order upholding the PI after Yue's first attempt to modify or dissolve it. Thus, this is Yue's third bite at the same apple and cannot meet the threshold of "changed facts or law" required to justify dissolution of the PI.

**Fourth**, the CN '921 reference, alone or in combination with other references, does not disclose each and every element of exemplary claims 1 or 8, and for that reason does not present a substantial new question of invalidity.

Yue's Motion is deficient, presents no new arguments to the Court, and should be denied.

## II. FACTUAL BACKGROUND

Yue originally initiated this case by suing Lup on various grounds including its own U.S. Patent No. 11,756,703 ("'703 Patent"). On July 24, 2024, a third party, unrelated to Lup, filed a Petition for Reexamination (90/019,597) of Yue's '703 Patent ("'703 Reexam"). In that proceeding, Yue is represented by attorney Jacqueline Bardini, and the CN '921 reference was the primary invalidating reference. *Id.*

Lup answered Yue's claims, and counterclaimed for infringement of Lup's U.S. Patent No. 11,972,881 ("'881 Patent", Dkt. 159-3). Dkt. 55. Both parties filed cross motions for preliminary injunctions. Dkts. 24-1 (Yue Motion for PI) and 57 (Lup Motion for PI).

This Court denied Yue's Motion, granted Lup's Motion and issued a preliminary injunction against Yue based in part on its finding that Lup was likely to succeed on the merits against Yue's invalidity and unenforceability defenses on December 17, 2024 (Dkt. 128) and its amended order on December 18, 2024 (Dkt. 130).

Yue then filed a first Motion to lift the PI based on the CN '921 on April 5, 2025. Dkt. 153. Lup responded on April 14, 2025 (Dkt. 156) and Yue replied (Dkt. 158). This Court denied Yue's Motion (Dkt. 163).

On January 10, 2025, Yue appealed this Court's PI Order by filing *Yue et all v. Hanna et al.*, 25-1356 (Fed. Cir. 2025) ("Appeal"). Lup filed its response (Appeal, Dkt. 35), but Yue intentionally failed to file a reply. On Nov. 7, 2025, Yue filed a Motion to Dismiss its appeal (Appeal, Dkt. 50) and on Nov. 11, 2025, Lup filed a Motion for sanctions and fees (Appeal, Dkt. 51). The Federal Circuit has not addressed either motion, and the appeal remains pending.

On April 11, 2025, Yue—via Yue's attorney, Jacqueline Bardini—filed a Petition for Reexamination (No. 90/019,853) of the '881 Patent. TheUSPTO granted the request for reexamination on May 6, 2025. Dkt. 159-5. On October 3, 2025, the USPTO issued a preliminary non-final office action rejecting all claims as a matter of course.

## III. LEGAL STANDARD

### A. An Appeal Divests The District Court of Jurisdiction

The Supreme Court held that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* The Fifth Circuit applies this rule in the context of a preliminary injunction that is simultaneously attacked in the appellate court and the issuing district court. *Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 819 (Fed. Cir. 1989) (*citing* Fed. R. Civ. Pro. 62(c)). In *Coastal*, the appellate court explicitly voided a district court order dissolving a preliminary injunction while a coextensive appeal was pending. *Id.*

A notice of appeal typically divests the district court of jurisdiction over the judgment or order appealed. *U.S. v. Hitchmon*, 587 F.2d 1357 (5th Cir. 1979); *accord Henry v. Independent American Savings Ass'n*, 857 F.2d 995 (5th Cir. 1988). The filing of a notice of appeal thus confers jurisdiction over the order or judgment appealed from and limits the district court's jurisdiction

over the order or judgment appealed from to maintaining the status quo (i.e. enforcing the order). *Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 819 (Fed. Cir. 1989) (*citing* Fed. R. Civ. Pro. 62(c)); *also see Thomas v. Capital Sec. Serv., Inc.*, 812 F.2d 984, 987 (5th Cir. 1987), modified on other grounds, 836 F.2d 866 (5th Cir. 1988); *see also*, 20 James W. Moore, *et al*., Moore's Federal Practice § 303.32 (3d ed. 1997). This rule applies to preliminary injunctions. *Coastal Corp.*, 869 F.2d at 819 (Fed. Cir. 1989) ("the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal.").

### B. A Grant Of A Reexam Is Not Probative Of Unpatentability

A "grant by the examiner of a request for reexamination is not probative of unpatentability." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). While a grant of a reexam may "surely [be] evidence that the criterion for reexamination has been met (*i.e.*, that a 'substantial new question of patentability' has been raised, 35 U.S.C. § 303), [it] does not establish a likelihood of patent invalidity." *Id*. (emphasis added). Thus, in arguing that a patent owner is unlikely to succeed on the merits regarding patent validity, the challenger must present substantial proof of the prior art in sufficient detail to allow the court to "make an assessment of the persuasiveness of the challenger's evidence" on its own. *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d at 878, 883 (Fed. Cir. 1992).

### C. Presumption of Validity; Clear and Convincing Standard of Proof

Patents are presumed valid and enforceable, the invalidity or unenforceability must be proved by clear and convincing evidence, and that burden rests on the challenger. 35 U.S.C. § 282; *Ingenico Inc. v. IOEngine, LLC*, 136 F.4th 1354 (Fed. Cir. May 7, 2025) (overcoming the presumption of validity requires clear and convincing evidence). At the preliminary injunction stage, "the trial court does not resolve the validity question but rather must, . . . make an assessment

of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co.*, 970 F.2d at 883.

**D. Legal Standard For A Motion To Dissolve A Preliminary Injunction**

To dissolve a preliminary injunction, "[t]he party seeking relief bears the burden of establishing that the change in circumstances warrants the relief." *Total Safety v. Knox*, 4:19-CV-02719. 2019 WL 6894683, at *2 (S.D. Tex. Dec. 18, 2019). "In persuading the court to dissolve a preliminary injunction, *the moving party must make a strong evidentiary showing*." *Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2009 WL 8590962, at *2 (E.D. Tex. June 24, 2009) (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932)) (emphasis added).

The United States Supreme Court has determined that Federal Rule 60(b)(5) applies to motions to dissolve preliminary injunctions and that it is appropriate to do so only where there exists "a significant change either in factual conditions or in law[.]" *Total Safety*, 2009 WL 6894683, at *2 (citing and quoting *Horne v. Flores*, 557 U.S. 433, 477 (2009)); *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018) (refusing to find district court abused its discretion by denying motion to modify injunction where there was "no showing of a significant change in circumstances."); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006) ("Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed."); *MI-LLC v. Fpusa, LLC*, No. SA:15-CV-406-DAE, 2016 WL 6088344, at *3 (W.D. Tex. Oct. 17, 2016) ("Ordinarily, the purpose of a motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable."); *Ahmad v. City of St. Louis*, 995 F.3d 635, 640 (8th Cir. 2021) ("Modifying or dissolving a preliminary injunction is proper only when there has been a change of circumstances[.]") (quoting *Favia v. Indiana Univ. of Penn.*, 7 F.3d 332, 337 (3d Cir. 1993)). When there is a change, the change raised by the movant cannot be simply *any* change.

*Total Safety*, 2019 WL 6894683 at *2. Rather, the change must be a "significant change." *Id.*; *see Bear Ranch*, 885 F.3d at 803 (basing decision on the lack of a "significant change").

The "changed circumstances" requirement exists for a reason. If a motion to dissolve was not based on changed circumstances, a party could "regain its lost opportunity" to appeal a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) "simply by making a motion to modify or dissolve the injunction, having the motion denied, and appealing the denial." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019); *see Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013) (the requirement of a change in circumstances "presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before."); *Favia*, 7 F. 3d at 337–38 ("When a district court enters an order granting preliminary injunctive relief, parties who take exception to its terms must either file a motion for reconsideration in the district court . . . under Rule 59(e), bring an interlocutory appeal from that order under 28 U.S.C.A. § 1292(a)(1), or wait until the preliminary injunction becomes final and then appeal."); *Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 401 (2d Cir. 2000) (same).

Because Plaintiffs have not raised any significant change in law or facts, Plaintiffs are attempting to use the Motion to Dissolve as another bite at the apple and a backdoor to an appeal they have now abandoned. *See Franklin Twp. V. Sewerage Auth. V. Middlesex Cnty. v. Utilities Auth.*, 787 F.2d 117, 121 (3d Cir. 1986) ("Now that the time for appeal has run, Woodbridge may not avoid the consequences of its failure to appeal timely by cloaking its late appeal in the guise of a motion to dissolve the injunction."). This is impermissible use of a motion to dissolve, and Plaintiffs have no right to a second bite at the proverbial apple. *Ahmad*, 995 F.3d at 646 ("Even though the City captioned its motion as a request to 'dissolve' the injunction, the essence of its

motion was a request to reconsider the injunction. That the City relied on evidence existing before the district court entered the preliminary injunction is fatal and should have ended the inquiry.").

## IV. ARGUMENT

Yue's Motion fails for multiple reasons. First, Yue again impermissibly filed this Motion despite the pending appeal, which deprives this Court of subject matter jurisdiction over the preliminary injunction. Second, Yue's Motion fails the "changed circumstances" requirement because it relies solely on the fact that the patent office issued a first non-final preliminarily office action concerning prior art that was known to Yue prior to the issuance of the PI.[1] Third, Yue's Motion also fails the "changed circumstances" requirement because it asserts prior art that has already been specifically evaluated and rejected by this Court, including in granting the PI in the first place, and again in its order upholding the PI after Yue's first Motion.

### A. Yue's Appeal Divested This Court of Jurisdiction

This is Yue's second attempt to ask this Court to modify or dissolve the PI over which it has no jurisdiction while the appeal is pending. This Court has already denied Yue's first motion on this ground. Dkt. 163 at 12 ("Counter-Defendants' appeal of the preliminary injunction order has divested this Court of the jurisdiction to dissolve the preliminary injunction. For this reason, Counter-Defendants' motion is denied.").

The PI remains validly on appeal until the federal circuit takes some action. Yue's Motion only cursorily states that Yue's appeal "has been dropped." Motion at 4, 5. In support Yue cites its unilateral motion to dismiss (Appeal, Dkt. 50). Yue mischaracterizes—by omission—the

---

[1] *See* Dkt. 118-11 (Exhibit 11 to Plaintiffs' Statement of Facts is the same CN '921 patent relied on by Plaintiffs in its Motion to Dissolve). Defendants were aware of the CN '921 patent at least as early as July 24, 2024, which is the date a request for reexamination request against Yue's '703 patent was filed with the USPTO citing CN '921 as prior art. *See* '703 Reexam (90/019,597) (asserting CN '921).

current state of its appeal. Yue's appellate motion to dismiss remains pending, as does Lup's motion for sanctions (Appeal, Dkt. 51). The Federal Circuit has not ruled on either motion nor has it addressed the merits of the appeal, and thus, the appeal has not yet been dismissed by any means. For this reason alone, Yue's Motion must be denied as untimely.

Yue's citation to *Dayton Indep. Sch. Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (citing *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817 (5th Cir. 1989)) squarely supports Lup on this point. In *Dayton*, the fifth circuit explicitly stated that "we are bound by our well-established rulings that the district court loses jurisdiction over all matters which are validly on appeal." *Id.* (citing *Coastal Corp.*). This rule "which we follow rigorously" is based upon binding Supreme Court precedent. *Id.* (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)).

Since Yue's requested relief (vacating the PI Order) would conflict with and moot the pending appeal of the same order, the relief Yue requests is barred and its Motion must be denied.

**B. Yue's Motion Does Not Present A Reasonable Challenge To Validity**

Yue's motion presents no valid challenge to validity. Yue's reference to a preliminary *non-final* office action in a reexamination alone is insufficient as a matter of law; Yue identifies no sufficient "changed circumstance" that would warrant dissolution of the PI; and this Court has already analyzed the art asserted by Yue, which does not teach or suggest the relevant claims.

***1. A Non-Final Office Action Rejecting The Claims Is Not Sufficient***

Yue's Motion relies solely on the fact that the patent office issued a first non-final preliminarily office action preliminarily rejecting the claims. This mere reference falls short of the required "assessment of the persuasiveness of the challenger's evidence" regarding patent validity. *New England Braiding Co.*, 970 F.2d at 883. While an office action in a reexamination proceedings is a factor that may be considered, it is by no means dispositive, when evaluating a

plaintiff's likelihood of success on the merits at the preliminary injunction stage. *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008).

Contrary to Yue's argument, binding precedent accords neither the grant of a reexam nor a preliminary decision in a non-final office action any probative weight regarding patentability. *See Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) (grant of reexam is not probative of invalidity because nearly all reexam requests are granted while nearly none result in the cancellation of all claims) (citing USPTO reexam statistics available at https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf); *see also Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 793–794 (S.D. Tex Sep. 27, 2010) (finding that "there is still no probative value on the issue of invalidity" based only on the rejection of claims in an office action "due to the differing standards applied in reexamination and in this litigation."); *Cummins-Allison Corp. v. SBM Co.*, No. 9:07-cv-196, 2009 WL 763926, at *10 (E.D. Tex. March 19, 2009); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7182476, at fn. 2 (E.D. Tex. April 25, 2008); *also see Fiber Sys. Int'l v. Applied Optical Sys.*, 2009 WL 8590962, *8-9 (E.D. Tex. March 12, 2009) (simply pointing to the reexamination is insufficient in the absence of a meaningful analysis of the invalidity arguments). This is an absolute requirement in order to meet the heightened standard of proof. *Tesco Corp.*, 750 F. Supp. 2d at 814.

Again, this Court has already acknowledged this fact. Dkt. 163 at 13–14 ("the USPTO's decision to institute a reexamination of the '881 Patent alone is not probative evidence of the invalidity of the patent.").

Yue's cited cases are inapposite. Yue first cites *DUSA Pharm., Inc. v. River's Edge Pharm., LLC*, No. 06-1843 (SRC), 2007 WL 748448, (D.N.J. March 7, 2007). Motion at 5–6. In that case, a preliminary injunction issued, and the Defendant sought dissolution after USPTO

granted reexamination and issued an initial office action rejecting all claims. First, this case involved an *Inter Partes* Reexamination not an *Ex Parte* Reexamination. Further, the Court specifically noted that "the reexamination order is not dispositive on the issue of validity." *Id.* at *3. Instead, the "changed circumstance" that warranted revisiting the preliminary injunction was the patent owner's expert declaration arguing for a narrowed claim construction *that vitiated the infringement read on which the original injunction was granted*. *Id*. at *4. To the contrary, as explained in *M-I LLC v. Fpusa, LLC*, 2016 WL 6088344, n. 3 (WDTX October 17, 2016) "*DUSA* does not stand for the proposition that the district court must dissolve an injunction following a preliminary finding by the USPTO".

Yue further cites *Smart Modular Tech., Inc. v. Netlist, Inc.*, No. 2:12-cv-2319-TLN-EFB, 2013 WL 2384342 (E.D. Cal. May 30, 2013). Motion at 6. That case is also inapposite. First, it does not involve a request to dissolve an existing preliminary injunction. Instead, the patent owner moved for a preliminary injunction and the defendant moved to stay the litigation pending the final result of an ongoing reexamination proceeding. *Smart Modular Tech.,* 2013 WL 2384342, *1. The Court denied the motion for a preliminary injunction only because the patent owner focused only on infringement and irreparable harm and failed to address validity. This failure to address validity altogether—especially in light of the reexam—was fatal. *Id*. at *3. Thus, the Court denied the preliminary injunction and granted the stay. *Id*. at *5.

Yue further cites *TAS Energy, Inc. v. Stellar Energy Am., Inc.*, No. 8:14-cv-3145-T-30MAP, 2015 WL 6156149 (M.D. Fla. Oct. 19, 2016). Motion at 8. This is also not a preliminary injunction dissolution case. Instead, a motion for a preliminary injunction was denied because the patentee had failed to demonstrate that the invalidity defense lacked substantial merit. *Id.* at *8. Although the Court noted a related PTAB IPR institution decision, that decision pertained only to

a nearly identical claim to the patent claim at the heart of the proposed injunction. Thus, patentee's failure to address the validity case was the primary factor.

Yue further cites *DNA Genotek Inc. v. Spectrum Solutions LLC*, No. 16-cv-1544, ECF No. 12, 2016 WL 8738225 (S.D. Cal. Oct. 6, 2016). Motion at 9. Again, this is not a preliminary injunction dissolution case. Instead, a request for a preliminary injunction was denied, in part, because the patentee failed to prove up irreparable harm, and further failed to rebut the question of validity raised in a pending IPR proceeding asserted in response to the motion for preliminary injunction. *Id*. at *3 and *5.

In sharp contrast to Yue's cases, Lup in this case has rebutted Yue's invalidity arguments substantively in its original motion for a preliminary injunction, in its response to lift the preliminary injunction, and now again in this response to Yue's second motion to lift the PI.

Further, all four cases cited by Yue have been distinguished in a case issued in this Court, *M-I LLC v. Fpusa, LLC*, 2016 WL 6088344, n. 3 (WDTX October 17, 2016), which confirms that the court cannot just rely on the existence of a proceeding before the patent office to dissolve a PI. *Id*. Instead, the party opposing the preliminary injunction must show that the validity issues raised in the reexamination/review proceeding suggest that the patent owner is not likely to succeed on the merits of its invalidity defense. *Id*. Importantly, the court noted the importance of the fact that the prior art at issue in the reexam was newly discovered and not known to the Defendant during the original preliminary injunction briefing. *Id.* at *2 ("The IPR Petition asserted that numerous claims of the '288 Patent were unpatentable, based upon six prior art references which Defendant *had not discovered* at the time this Court held the hearing on the Motion for a Preliminary Injunction.") (emphasis added). Thus, *newly discovered* prior art may give rise to "changed

circumstances" sufficient to reassess the merits of a preliminary injunction. *Id*. There is no such new art presented by Yue in its Motion here.

Moreover, Lup's position is supported by Federal Circuit guidance, which expressly cautions district courts that the standard utilized in reexamination proceedings differs from the "'substantial question of validity' standard by which a defendant may prevent a patentee from demonstrating a likelihood of success on the merits." *Id*. (citing *Procter & Gamble Co.*, 549 F.3d at 848). The Federal Circuit further explained that the patent office's decisions are based upon an entirely different standard than the standard used in the instant proceedings. *Id*. Notably, the current inconsistency between the two proceedings, while confusing, is "inherent to Congress' regulatory design." *Cuozzo Speed Technologies, LLC v. Lee, 579 U.S. 261 (2016)*. Accordingly, "while the PTAB's stated reasons . . . may inform this Court's analysis of validity based upon prior art, the Court need not rely on the PTAB's conclusions at this preliminary state.

Public policy supports denial. Entertaining Yue's motion before both Yue's appeal and Yue's reexamination request have been *finally resolved* only encourages a litany of motions in cases like this repeating the same arguments every intermittent step of the way. Such an inefficient use of court and party resources unfairly favors big well-funded corporate entities—like Yue—over individual proprietorships with limited resources—like Lup—and should be discouraged.

### 2. ***The Reexam Prior Art Was Already Before The Court When It Decided The PI Motion***

The main prior art relied on by the USPTO in the preliminary office action anticipation arguments initially rejecting independent claims 1, 2, 6, 7, and 9, and repeated in Yue's Motion, is Chinese Patent No. 113,674,921 ("CN '921"). Motion at 6 and Exhibit B. But CN '921 is not "newly discovered" prior art. Yue has known about it since at least July 24, 2024, when it was cited against Yue in a reexamination of Yue's '703 Patent. '703 Reexam (90/019,597). Yue had

months to develop a cogent invalidity argument using CN ’921 in its briefing and during oral argument at the preliminary injunction hearing, but Yue failed to do so. In fact, Yue not only knew about it, Yue even cited CN ‘921 to this Court prior to the preliminary injunction hearing as allegedly invalidating prior art. *See* Dkt. 118-11. However, Yue failed to adequately develop the argument, as noted by the Court: “Plaintiffs have had six months to develop a substantive argument as to how at least one prior art reference anticipates the ’881 Patent, and yet Plaintiffs have failed to do so. This Court will not allow Plaintiffs to infinitely delay resolution of Lup’s motion simply because they have failed to timely produce sufficient evidence of invalidity.” Dkt. 130 at 11–12. Yue failed to adequately develop an invalidity theory based on CN ’921, although Yue clearly knew about the reference and even filed it with the Court in advance of the PI hearing, and then, in its first motion to vacate, Yue reasserted the CN ’921 reference and improperly blamed the Court for not giving it adequate consideration. Dkt. 163 at 18–19 (“Counter-Defendants’ allegation that the Court has ignored these prior art references is nothing more than an attempt to place the blame on the Court for Counter-Defendants’ own deficient briefing on their invalidity defense.”).

Yue now raises the same prior art reference for a third time. The Court should not allow Yue to make these arguments now—over a year after the initial PI briefing—when Yue had everything needed to make its arguments available to it from the very start. That is the very antithesis of the “changed circumstances” requirement imposed by the Supreme Court. *See*, *e.g.*, *Total Safety*, 2019 WL 6894683 at *2 and *Fiber Sys. Int’l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2009 WL 8590962, at *2 (E.D. Tex. June 24, 2009) (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932)) (emphasis added).

Yue's Motion raises no new art for the Court to consider, and rests solely on the initial office action in the pending reexamination, which carries no probative value because the PTO initiates well over 90% of all reexam requests while invalidating very few (*Hoechst*, 78 F.3d 1584) and because the standard of proof in the USPTO is lower than in district court (*Tesco Corp.*, 750 F. Supp. 2d at 793–794).

### 3. *A Final Rejection of All Claims in The Reexam is Unlikely*

The reexam process is inherently unlikely to be successful. The federal circuit explicitly noted that "[t]he Annual Report of the Patent and Trademark Office for 1994 states that 89% of the reexamination requests were granted that year, but only 5.6% of the reexamined patents were completely rejected with no claims remaining after reexamination." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996), fn. 2. The cited statistics have since become even more extreme. The most recent *ex parte* reexamination filing data, published September 30, 2024, shows that 92.6% of the reexamination requests were granted, but only 14.1% of the reexamined patents were completely rejected with no claims remaining after reexamination.[2] The Federal Circuit's logic from *Hoechst* thus remains sound. The beginning stages of a reexam do not present a high likelihood of unpatentability.

Further, a petition for review is currently pending to dismiss the entire reexam for improper service. Scardino Dec., Exhibit A (Petition Under 37 CFR § 1.181). This is based on multiple failures by petitioner to effect proper service of the reexam. Further still, the reexam process allows for claim amendments and new claims to be filed. 37 CFR § 1.550(b).

Thus, the reexam is highly unlikely to result in cancellation of all claims.

---

[2] Available at https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf.

#### 4. *CN ’921 Does Not Disclose Or Suggest The Claims*

Patents are presumed valid and enforceable, and the burden of establishing invalidity or unenforceability rests on the challenger. 35 U.S.C. § 282. At the preliminary injunction stage, the trial court must “make an assessment of the persuasiveness of the challenger’s evidence.” *New England Braiding Co*., 970 F.2d at 883. The standard of proof for invalidity at a trial in district court is clear and convincing evidence. 35 U.S.C. § 282; *Ingenico Inc. v. IOEngine, LLC*, 136 F.4th 1354 (Fed. Cir. May 7, 2025 (overcoming the presumption of validity requires clear and convincing evidence). For a successful challenge to validity under anticipation “the identical invention must be shown in as complete detail as is contained in the ... claim.” *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236, 9 USPQ2d 1913, 1920 (Fed. Cir. 1989). Yue falls short.

Yue primarily relies on the Chinese patent CN ’921 because that is the prior art that lies at the center of the reexam. The machine translation of CN ’921 provided by Yue to this Court and in the reexamination has multiple flaws, was illegible or inconsistent in some parts, inaccurate in others, and appears to have been improperly edited or annotated as detailed below. A certified, human translation is attached here as Scardino Dec., Exhibit B. As the MPEP notes, a human translation is preferred over a machine translation. MPEP § 608.01(p); MPEP § 2120 (II). In the machine translation, there is some disclosure of cable cross sections including “circular, flat, regular oval shaped and irregular.” However, in the human translation, CN 921 discloses only curved cable shapes, including “circular, flat and elliptical, and irregular.” Further, Yue’s machine translation appears to have been modified or annotated. Figure 3 of Yue’s translation includes typed comments but those do not appear in the original Chinese version of the patent:




CN ’921, Fig. 3 (Yue translation, showing wrong labels on Fig. 3). The original CN ’921 does not include written labels on Fig. 3.

Substantively, CN ’921 does not disclose all elements of the ’881 patent claims. For example, claim element 1.d requires that “the magnetic cable has a substantially rectangular cross section defining a pair of substantially planar and parallel major surfaces.” ’881 Patent, claim 1. CN ’921 does not disclose this limitation. To the contrary, CN ’921 discloses explicitly that “the cross-sectional shape of the data line is circular.” CN ‘921 at 5.




CN ’921, Fig. 3. The only other reference to cable shape in CN ’921 is in claim 5: “circular, flat and elliptical, or is any irregular shape.” Scardino Dec., Exhibit B (CN ’921), claim 5. This is repeated verbatim in paragraph 17 of the reference. There are no other references to any other cable cross-section shapes, or any enabling disclosures in CN ’921 for anything other than the circular data line that is shown in the figure and discussed in the preferred embodiment. A substantially rectangular cross section is not disclosed anywhere and neither is “a pair of substantially planar and parallel major surfaces.” This is particularly important since the pair of

planar and parallel surfaces serves a functional purpose in the ’881 Patent, it allows the magnetic force to interact over the entirety of the two major surfaces. ’881 Patent at col. 7:1-4 (“In embodiments featuring a rectangular cross section cable, (e.g., the magnetized cable 101 of FIG 1.), the flat faces of the cable allow more surface area (and therefore greater magnetic force) between cable loops.”). Furthermore, “flat and elliptical” is disclosing a flattened circular cable shape, or ellipse. Such a cable does not have any flat faces. Decl. of Hanna at ¶¶8, 9.

A rectangle is a four-sided polygon. Disclosing features of the magnetized cable (101) depicted in FIG. 2, the ’881 Patent discloses “a rectangular or substantially rectangular cross section, with optional rounded or beveled corners, defining substantially planar and parallel opposing major surfaces. ’881 Patent at 4: 41–45 (“…rectangular or substantially rectangular, with optional rounded or beveled corners, defining substantially planar and parallel opposing major surfaces…”). One of ordinary skill in the field reviewing the ’881 Patent would therefore understand that the claim term “substantially rectangular” refers to a cross section that would be literally rectangular but for the inclusion of a ubiquitous manufacturing feature, such as beveled or rounded edges, widely associated with beneficial functional and/or aesthetic characteristics, that does not meaningfully alter the rectangular quality of the cross section.

Relying on Yue’s machine translation, Yue argues that claim 5 discloses a “flat” cable and an “oval regular shape” cable and argues that that disclosure meets the “substantially rectangular” claim limitation in Claim 1 of the ’881 Patent. Motion, Exhibit B, at 4. This is incorrect. A flat cable is literally flat such that the cross section of the cable is simply a line. Therefore, a flat cable, such as a ribbon cable, could not have an EMFC as described in the ’881 Patent because it would be too thin. Decl. of Hanna at ¶11. Furthermore, an “oval regular shape” is the same as an ellipse, a flattened circle without any straight sides or “parallel major surfaces,” as required by claim 1 of

the ’881 Patent. Therefore, even if Yue’s machine translation was correct and a “flat” cable was disclosed rather than only curved cables, as disclosed in the human translation, neither of these shapes disclose or suggest a rectangular cross section with parallel major surfaces as claimed.

The term “flat” also does not inherently disclose a rectangular or substantially rectangular cross section further because CN ’921 lacks any description of a flat cable shape that would enable a meaningful discussion of the characteristics possessed by such a shape and whether a shape possessing those characteristics necessarily discloses a rectangular or substantially rectangular cross section. The disclosure in an allegedly anticipating reference must provide an enabling disclosure of the desired subject matter. *Elan Pharm., Inc. v. Mayo Found. For Med. Educ. & Research*, 346 F.3d 1051, 1054, 68 USPQ2d 1373, 1376 (Fed. Cir. 2003). There is no enabling disclosure with respect to the alleged “flat” cable disclosed in the machine translation. Additionally, because one can readily imagine a flat cable that is not a rectangular or substantially rectangular cable, the inclusion of “flat within the section shapes listed in CN ’921 claim 5 does not inherently disclose a rectangular or substantially rectangle. The cross section of a convention ribbon cable, as an example of a flat cable, would clearly constitute a flat cross section but would not constitute a rectangular or substantially rectangular cross section.

Yue suggest that the substantially rectangular element is inherent in CN ’921. CN ’921 does not inherently describe a rectangular or substantially rectangular cross section. Anticipation based on the inherent teaching of a reference must provide a basis in fact and/or technical reasoning to support a finding that a limitation not expressly disclosed is <u>necessarily</u> present in the cited reference. *See, e.g.*, *Ex parte Levy*, 17 USPQ2d 1461, 1464 (Bd. Pat. App. & Inter. 1990). The fact that a certain result or characteristic <u>may</u> occur or be present in the prior art is not sufficient to establish the inherence of that result or characteristic. *In re* Rijckaert, 9 F.3d 1531, 1534, 28

USPQ2d 1955, 1957 (Fed. Cir. 1993). Yue cannot provide the requisite basis in fact or technical reasoning to support a finding of inherent teaching because the unadorned references in the machine translation to flat and/or regular oval section shapes found in CN '921 claim 5 do not necessarily encompass a rectangular or substantially rectangular cross section. In other words, flat and regular oval cross sections that are unambiguously not rectangular or substantially rectangular exist. The omission of "rectangular" from CN '921's enumerated alternatives is especially telling where the drafter expressly contemplated and named other common cross sections.

In addition, CN '921 does not disclose the last element of claim 1 of the '881 Patent, which requires that the pair of major surfaces lie within a first and second polarity region of the persistent magnetic field because the cable described in CN '921 has no major surfaces because it is circular or at most a "flattened circle."

In sum, there is no disclosure in CN '921 of the benefits of having substantially rectangular cross section with major surfaces that are planar and parallel to create greater magnetic force.

As another example, Yue asserts the combination of CN '921 with two other references (*Dlugas* and *Aase*) for claims 8, 12, 14, and 15. Motion at 6. However, Yue, provides no analysis of any motivation to combine these references whatsoever. This is a *sine qua none* of obviousness. In the absence of motivation to combine, these claims cannot be found obvious on the asserted combination. "Identifying a motivation to combine the prior art is important because 'inventions in most, if not all, instances rely on building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.'" *TQ Delta, LLC v. Cisco Systems, Inc.*, 942 F. 3d 1352 (Fed. Cir. Nov. 22, 2019) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)). Accordingly, it must be determined whether a person of

ordinary skill would have been motivated to combine the known references to arrive at the invention. *Id.*

The Federal Circuit frequently reverses USPTO decisions for failure to consider motivation to combine. *See*, *e.g.*, *Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*, 97 F.4th 882 (2024) (citation omitted and emphasis added); *see also TQ Delta, LLC v. Cisco Systems, Inc.*, 942 F. 3d 1352 (Fed. Cir. Nov. 22, 2019) (the Board failed to adequately analyze motivation to combine); *IPR Licensing, Inc. v. ZTE Corp.*, 685 F. App'x 933 (Fed. Cir. 2017) (same); *In re Schweickert*, 676 Fed. Appx. 988, 996 (Fed. Cir. 2017) (same); *DSS Technology Management, Inc. v. Apple Inc.*, 885 F.3d 1367 (Fed. Cir. 2018) (same); *Personal Web Technologies, LLC v. Apple, Inc.*, 848 F. 3d 987 (Fed. Cir. 2017) (same). Thus, an analysis as to whether a skilled artisan would have been motivated to make the asserted combination is mandatory. Yue's invalidity case as to claims 8, 12, 14, and 15 fails because Yue did not even make a prima facia case for motivation to combine.

#### 5. *Conclusion Regarding Validity*

Yue's Motion is facially deficient and does not support the requested relief. If the Court reaches a balance of the hardships or the public interest (not addressed by Yue), Lup incorporates its analysis thereof set forth in its original PI Motion. Dkt. 57 at 14–16. The arguments articulated there are fully applicable and relevant now, and support maintaining the current statue *quo*.

## V. CONCLUSION

For the reasons stated here, the Court should deny Plaintiffs' Motion to vacate the PI.

Dated: November 21, 2025

Respectfully Submitted,

*/s/ Daniel Scardino*
Daniel Scardino
Texas State Bar No. 24033165
Henning Schmidt
Texas State Bar No. 24060569
SCARDINO LLP
111 Congress Avenue, Suite 500

Austin, TX 78701
Tel.: (512) 443-1667
Fax: (512) 487-7606
daniel@scardinollp.com
Henning.schmidt@scardinollp.com

*Counsel for Defendants John Nashed Hanna and Reaction Labs LLC a/k/a Lup*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 21, 2025, all counsel of record are being served with a copy of the foregoing via electronic mail.

*/s/ Daniel Scardino*
Daniel Scardino