IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WENYONG YUE, et al., | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| v. | § | 1:24-CV-1125-RP |
| | § | |
| REACTION LABS, LLC *a/k/a* Lup, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

## ORDER

Before the Court is Counter-Defendants Wenyong Yue ("Yue"), Huizhoushi Huifangyuan Nongye Keji Youxian Gongsi a/k/a Botail ("Botail"), and yidiandian Shenzhen wenhuachuanmeiyouxiangongsi a/k/a Cool Essential's ("Cool Essential") (collectively, "Counter-Defendants") Opposed Motion to Vacate Preliminary Injunction. (Mot. to Vacate PI, Dkt. 176). Counter-Plaintiff Reaction Labs LLC a/k/a Lup ("Lup") filed a response in opposition, (Dkt. 177). Having considered the parties' briefs, the record, and the relevant law, the Court issues the following order.

## I. BACKGROUND

This case began as a dispute between owners of two different patents for magnetic data cables. Yue is the owner of the U.S. Patent No. 11,756,703 ("the '703 Patent"), which disclosed a magnetic data cable. (Am. Compl., Dkt. 96, ¶ 1; *see also* Ex. A, Dkt. 96-1). Botail and Cool Essential are China-based companies that operate Amazon stores to sell magnetic data cables to U.S. consumers under a license to the '703 Patent from Yue. (*Id.* ¶¶ 2–3). Lup is a Texas-based company, owned by John Nashed Hanna ("Hanna"), that operates an Amazon store which also sells magnetic data cables. (Defs.' Answer, Dkt. 55, ¶¶ 4–5). Lup is also the current owner and assignee of U.S.

Patent No. 11,972,881 ("the '881 Patent"), which also disclosed a magnetized cable. (*Id.* ¶¶ 4–5, 58; *see also* Ex. B, Dkt. 96-2).

In May 2024, Lup filed numerous complaints through the Amazon Patent Evaluation Express Program ("APEX") against over eighty Amazon listings belonging to Cool Essential and Botail. (*See* Order, Dkt. 128, at 2). Amazon then removed the allegedly infringing listings. (*Id.*). In response, on June 15, 2024, Counter-Defendants initiated this litigation by filing suit against Lup and Hanna on multiple grounds, including infringement of the '703 Patent. (Dkt. 1; *see also* Am. Compl., Dkt. 96).[1] Lup and Hanna answered Counter-Defendants' claims, and Lup, alone, counterclaimed for infringement of the '881 Patent. (Dkt. 55).

Both parties filed a motion for a preliminary injunction ("PI"). (Dkts. 24-1, 57). On December 13, 2024, the Court issued an order granting in part Hanna and Lup's motion for summary judgment, (Dkt. 88). (Order, Dkt. 122; *see also* Order, Dkt. 141). The Court found that Hanna and Lup were entitled to summary judgment on most of Counter-Defendants' claims against them and dismissed all of Counter-Defendants' claims. The Court accordingly denied as moot Counter-Defendants' motion for a PI. (*Id.*). The Court later dismissed Hanna as a party to this case, as no claim by or against him remained. (Order Dismissing Hanna, Dkt. 162).

As for Lup's remaining counterclaim, the Court held a hearing on its motion for a PI on December 5, 2024. (Min. Entry, Dkt. 119). At the hearing, the Court considered arguments from counsel on the parties' various filings related to Lup's motion. At the end of the hearing, the Court ordered Lup to file a proposed order granting the motion, which would include the specific Amazon Standard Identification Numbers ("ASINs") that Lup wished to be enjoined. (*Id.*). The day after the

---

[1] Since the initiation of this litigation, all claims of the '703 Patent have been found to be invalid after a third party requested, and the United States Patent and Trademark Office initiated, a reexamination of the '703 Patent. (*See* May 20, 2025 Final Office Action, Dkt. 160-1).

hearing, Lup filed a proposed order that contained the ASINs for the accused listings. (Dkt. 120). Counter-Defendants did not respond to Lup's proposed order.

On December 17, 2024, the Court entered an order granting Lup's motion and issued a PI against Counter-Defendants. (Order, Dkt. 128; *see also* Am. Order, Dkt. 130). The Court found that Lup had shown that it was likely to succeed on its claim that Counter-Defendants were infringing the '881 Patent. (*Id.* at 6–7). The Court also found that Counter-Defendants had failed to present any persuasive evidence that the '881 Patent is invalid due to inequitable conduct, the priority of the '703 Patent, or other prior art. (*Id.* at 7–12). As such, the Court found that Lup was likely to succeed on the issue of validity and the merits of its claim. (*Id.* at 12). After finding that the other preliminary injunction factors favored Lup, the Court issued an injunction barring Counter-Defendants from making, importing, or selling the accused products—specifically those sold through the ASINs identified by Lup in its proposed order. (*Id.* at 19). In issuing its injunction, the Court required Lup to post a bond in the amount of $25,000. (*Id.* at 20). Lup complied by depositing $25,000 with the Clerk of the Court. (Dkts. 131, 132).

On December 22, 2024, Counter-Defendants filed a Notice of Appeal challenging both the dismissal of their claims and the Court's order granting Lup's motion for a preliminary injunction. (Dkt. 133). On January 10, 2025, their appeal was formally docketed at the Federal Circuit. *Yue v. Hanna*, 25-1356 (Fed. Cir. 2025).

On April 11, 2025, Counter-Defendants filed a Petition for Reexamination of the '881 Patent before the United States Patent and Trademark Office ("USPTO"). (Dkt. 159-5). The petition asserted that reexamination was warranted based on nine substantial new questions of patentability. (*Id.*). On May 1, 2025, the USPTO instituted reexamination of the five independent claims of the '881 Patent on five of the nine grounds asserted in Counter-Defendants' petition. (Dkt. 159-2, at 8–16). The USPTO did not grant the reexamination request for the dependent claims and

3

did not grant the request for the independent claims based on substantial new questions of patentability 1, 2, 3, and 9.[2] (*Id.*).

Counter-Defendants subsequently filed two motions for relief from the Court's preliminary injunction. In their Motion for Wrongful Injunction Damages, Counter-Defendants argued that four ASINs were improperly enjoined as part of the Court's injunction, and accordingly they request damages for lost sales. (Dkt. 153). Counter-Defendants also filed a Motion to Vacate the Preliminary Injunction based on the USPTO's decision to institute a reexamination proceeding against the '881 Patent. (Dkt. 159). The Court denied both of these motions.[3]

Counter-Defendants now inform the Court that the USPTO has issued a preliminary Office Action rejecting all 18 claims of the '881 Patent, despite only instituting reexamination on certain claims. (Mot. to Vacate PI, Dkt. 176, at 6–7; USPTO Non-Final Office Action, Dkt. 176-1, at 3). Based on this non-final rejection, Counter-Defendants renewed their motion to vacate the PI and filed a motion to withdraw the pending appeal of the Court's PI with the Federal Circuit. In response, Lup filed a motion for sanctions against Counter-Defendants. The Federal Circuit's Order granting Counter-Defendants' voluntary motion to dismiss the appeal (with costs to Lup) and denying Lup's motion for sanctions was docketed with this Court on December 30, 2025.[4] (Fed. Cir. Order, Dkt. 178).

---

[2] As stated below, the USPTO subsequently issued a non-final rejection of all eighteen claims, despite only initially instituting reexamination as to claims one and nine. (USPTO Non-Final Office Action, Dkt. 176-1, at 3).

[3] As to the motion for wrongful injunction damages, the Court found that the motion was premature, as Counter-Defendants had not moved for the Court to amend its preliminary injunction order to remove the four ASINs at issue and had not carried their burden in showing they were entitled to wrongful injunction damages. (Order, Dkt. 163, at 9–10). As to the motion to vacate the preliminary injunction, the Court found that it lacked jurisdiction to dissolve its preliminary injunction while Counter-Defendants' appeal of the injunction remained pending before the Federal Circuit. (*Id.* at 13). And, even if the Court did consider the merits of the motion, the Court found that the USPTO's decision to institute a reexamination of the '881 Patent was not probative evidence of the patent's invalidity. (*Id.* at 13–14).

[4] Lup's Response to the instant motion, which contends that the Court continues to lack jurisdiction over the instant motion due to the appeal with the Federal Circuit remaining pending, (Dkt. 177, at 13–14), was filed prior to the Federal Circuit's Order being docketed with this Court.

## II. LEGAL STANDARD

District courts may appropriately modify an injunction "when the legal or factual circumstances justifying the injunction have changed." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018). Such a decision is reviewed for abuse of discretion. *Id.* "The party seeking to modify the injunction has the burden to show 'that changed circumstances warrant relief.'" *Id.* (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)).

If such a showing is made, district courts in the Fifth Circuit then "apply the same standards in reviewing a preliminary injunction under a motion to dissolve as they do in deciding whether to grant one in the first instance." *Chamber of Com. of United States v. Consumer Fin. Prot. Bureau*, 767 F. Supp. 3d 357, 362 (N.D. Tex. 2024) (citing *Texas v. United States*, No. 7:15-CV-00056-O, 2015 WL 13424776, at *1 (N.D. Tex. June 26, 2015)). Federal Rule of Civil Procedure 65(a)(1) provides that the Court "may issue a preliminary injunction only on notice to the adverse party." The party moving for the preliminary injunction must establish the following: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

When reviewing a district court's decision to grant or deny a preliminary injunction, the Federal Circuit applies the law of the regional circuit when reviewing and interpreting such decisions. *Aevoe Corp. v. AE Tech. Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013). However, "[s]ubstantive matters of patent infringement are unique to patent law, and thus the estimated likelihood of success in establishing infringement is governed by Federal Circuit law." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012). To demonstrate a likelihood of success on the merits, a patent holder must show that it will likely prove that the alleged infringer is infringing the asserted

patent and that the patent holder will likely withstand "challenges to the validity and enforceability of" the asserted patent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)). If the alleged infringer "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue."[5] *Id.* at 1350–51.

### III. DISCUSSION

The Court first addresses whether Counter-Defendants, as the "party seeking to modify the injunction," have met their "burden to show 'that changed circumstances warrant relief.'" *Bear Ranch, L.L.C.*, 885 F.3d at 803 (quoting *Horne*, 557 U.S. at 447). The Court agrees with the reasoning in *DUSA Pharmaceuticals, Inc. v. River's Edge Pharmaceuticals, LLC*, which similarly involved a motion to dissolve a PI after the USPTO issued a non-final rejection of all claims of the asserted patent. *DUSA Pharms., Inc. v. River's Edge Pharms., LLC*, No. 06-1843SRC, 2007 WL 748448, at *2–3 (D.N.J. Mar. 7, 2007). In *DUSA*, the court found that "the USPTO's decision to reexamine the [asserted patent] and its accompanying initial Office Action . . . rejecting all 16 of the claims in the [asserted patent]" was a "changed circumstance that justif[ied] the dissolution of the preliminary injunction."[6]

---

[5] At trial, the "test for invalidity . . . is by evidence that is clear and convincing." *Amazon.com, Inc.*, 239 F.3d at 1358 (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)). At the PI stage, however, "one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Id.* at 1359.

[6] The Court notes that Lup, in its response to Counter-Defendants' motion to vacate the PI, **blatantly misrepresented** the court's reasoning in *DUSA*. (Lup Resp., Dkt. 177, at 16). Lup claims that the changed circumstance in *DUSA* was *not* the initial office action rejecting the patent's claims and that "[i]nstead, the 'changed circumstances' that warranted revisiting the preliminary injunction was the patent holder's expert declaration arguing for a narrowed claim construction.'" (*Id.*). To the contrary, the *DUSA* court explicitly found **two** changed circumstances: "This Court finds that [the defendant] has demonstrated **two changed circumstances** that justify the dissolution of the preliminary injunction: (1) the PTO's decision to reexamine the [asserted patent] **and its accompanying initial Office Action of November 22, 2006 rejecting all 16 of the claims in the [asserted patent]** and (2) DUSA's definition of the term 'substantial release form' through the Williams Declaration." *DUSA Pharms.*, 2007 WL 748448, at *2 (emphasis added). Moreover, Lup represents that the court in DUSA "specifically noted that 'the reexamination order is not dispositive on the issue of validity.'" (*Id.*). Though this phrase does appear in *DUSA*, Lup has taken it out of context. The full

*Id.* Here, too, the Court finds that the USPTO's preliminary Office Action rejecting all eighteen of the '881 Patent's claims qualifies as a changed circumstance that warrants the Court's reconsideration of its PI.

Accordingly, the Court will address whether Lup, as the party seeking to maintain the PI, is continuing to meet the requirements for injunctive relief. First, Lup must show a likelihood of success on the merits. As stated in Section II, *supra*, Lup therefore must show that it will likely prove that Counter-Defendants are infringing the '881 Patent and that Lup will likely withstand challenges to the validity and enforceability of the '881 Patent. *See Amazon.com, Inc.*, 239 F.3d at 1350. The Court will dissolve the PI if Counter-Defendants "raise[] a substantial question concerning either infringement or validity." *See id.* at 1350–51. At the PI stage, alleged infringers such as Counter-Defendants need only show that the asserted patent is "vulnerable." *See id.* at 1359.

The Federal Circuit has instructed district courts to "consider the current posture of the inter partes reexamination proceedings at the PTO when evaluating [the patent holder's] likelihood of success on the merits."[7] *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008). It specifically noted that a USPTO examiner's determination in a reexamination proceeding "may be relevant to [the patent holder's] likelihood of success," though a mere grant of reexamination is not probative of patentability. *Id.* at 847–48; *see also Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner

---

sentence is: "While the reexamination order is not dispositive on the issue of validity, the Court does find that 'it is probative to the issue of whether [DUSA has] raised a substantial question of validity.'" *Id.* at *3. That court then proceeded to dissolve the PI, reasoning that the changed circumstance of the non-final Office Action "**raises a substantial question of validity with regard to the [asserted patent]" and "justif[ies] dissolution of the preliminary injunction**." *Id.* The Court warns Lup to more carefully present case law in the future.

[7] Though the instant case involves ex parte reexamination rather than inter partes review, and though Lup attempts to distinguish the instant case from those involving inter partes review reexamination, (*see* Lup Resp., Dkt. 177, at 16), it provides no argument or rationale for *why* cases involving inter partes review should not be persuasive to the Court in this context. In the absence of any argument to the contrary, the Court finds that cases involving a PI followed by the rejection of claims through inter partes review are just as instructive as cases involving a PI followed by the rejection of claims through ex parte reexamination.

of a request for reexamination is not probative of unpatentability."). Notably, vulnerability may be shown by an examiner's rejection of claims issued after a PI, though such a rejection by the USPTO is not dispositive. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods.*, LLC, 431 F. App'x 884, 889 n.3 (Fed. Cir. 2011) (citing *Proctor & Gamble Co.*, 539 F.3d at 847) ("[T]he examiner's decision regarding patentability can be considered when discerning the likelihood of success. Although the rejection issued after the district court's preliminary injunction ruling, we note that the rejection provides further support for [the alleged infringer's] position that the [the asserted patent] claims are 'vulnerable.'").

Here, the USPTO examiner rejected all eighteen claims in the '881 Patent under 35 U.S.C. § 102(a)(1) as being anticipated by Chinese Patent Document CN113674921 A ("CN '921") or as obvious over CN '921 in view of CN '921 in combination with two new pieces of prior art, the "Dlugas"[8] and "Aase"[9] references. (Office Action, Dkt. 176-1, at 6, 15). CN '921 was also the main reference cited when the USPTO invalidated the '703 Patent, and the same USPTO examiner was assigned to the reexamination of the '703 Patent as to the ongoing reexamination of the '881 Patent. (Mot. to Vacate, Dkt. 176, at 13). Counter-Defendants point out that the '881 Patent's claims being "rejected based on the same art is not surprising, given the similarity of the claims in the now-invalidated '703 Patent and the '881 Patent." (*Id.* at 13). They explain that the '703 and '881 Patents each recite a magnetic cable in which the data cable core is wrapped by one or more layers of magnetic materials and outer protective layers and argue that "the citation of the CN '921 Patent against both patents shows that there is a substantial question of validity regarding the '881 Patent that weighs against maintaining the preliminary injunction." (*Id.* at 14). Counter-Defendants

---

[8] U.S. Patent Application Publication No. 2009/0056972, to Dlugas et al.
[9] U.S. Patent Application Publication No. 2011/0170733, to Aase et al.

emphasize that the Office Action is "persuasive evidence that a preliminary injunction is not warranted." (*Id.* at 9).

Lup responds in opposition: (1) though an office action in a reexamination is a factor that may be considered, it is not dispositive;[10] (2) Counter-Defendants' motion does not rely upon newly discovered prior art, so that is not a "changed circumstance"; (3) a final rejection of all claims in the reexamination is unlikely; and (4) CN '921 does not disclose or suggest the '881 Patent's claims. First, the Court agrees that it need not necessarily dissolve the PI as a result of the USPTO's non-final Office Action but finds that it may do so. The Federal Circuit has instructed district courts to "consider the current posture" of reexamination proceedings when evaluating a patent holder's likelihood of success on the merits. *Procter & Gamble Co.*, 549 F.3d at 847. The current posture—that all eighteen claims of the patent have been preliminarily rejected—tilts strongly in favor of the '881 Patent being "vulnerable." *See Amazon.com, Inc.*, 239 F.3d at 1350–51, 1359 (noting that at the PI stage, a PI should not be issued if the alleged infringer shows that the asserted patent is "vulnerable"); *Kimberly-Clark Worldwide, Inc.*, 431 F. App'x at 889 n.3 (citing *Proctor & Gamble Co.*, 539 F.3d at 847) ("[T]he examiner's decision regarding patentability can be considered when discerning the likelihood of success. Although the rejection issued after the district court's preliminary injunction ruling, we note that the rejection provides further support for [the alleged infringer's] position that the [the asserted patent] claims are 'vulnerable.'").

It is true that, in some contexts, the Federal Circuit and other courts have found a preliminary office action in reexamination proceedings to not be probative of invalidity. For

---

[10] Strangely, two of the citations given by Lup in support of this assertion are incorrect. Lup cites to *Cummins-Allison Corp. v. SBM Co.*, No. 9:07-cv-196, 2009 WL 763926, at *10 (E.D. Tex. March 19, 2009). (Lup Resp., Dkt. 177, at 15). Though this order exists, it only eight pages long, making Lup's citation to page *10 impossible. Similarly, Lup cites *Fiber Sys. Int'l v. Applied Optical Sys.*, 2009 WL 8590962, at *8-9 (E.D. Tex. March 12, 2009), an order that is only six pages long and was published on June 24, 2009, not in March 2009. The Court cautions Lup's counsel to cite-check his filings in the future, as such mistakes may suggest reliance upon artificial intelligence without independently validating the accuracy of generated citations.

example, in *Acoustical Design, Inc. v. Control Electronics Co.*, the Federal Circuit noted that an alleged infringer could not have a good-faith belief that a patent was invalid after an initial rejection by the USPTO. 932 F.2d 939, 942 (Fed. Cir. 1991).[11] This holding, however, was in the context of post-trial motions after a jury found the alleged infringers had willfully infringed upon the patent. In *Tesco Corp. v. Weatherford International, Inc.*, a court in this Circuit held that an examiner's rejection of claims in a reexamination proceeding was inadmissible evidence for the purpose of proving invalidity of the patents at the summary judgment stage. 750 F. Supp. 2d 780, 793–94 (S.D. Tex Sept. 27, 2010). *See also DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1018 (S.D. Cal. 2011) (rejecting a defendant's argument at the summary judgment stage that it did not act recklessly because all claims of the asserted patent had been rejected in a non-final office action). Though a non-final rejection of all of a patent's claims may not be highly probative at trial or at the summary judgment stage— where the standard is "clear and convincing evidence"—the standard is this stage is merely whether Counter-Defendants have raised "substantial questions of invalidity," even if that "evidence . . . would not suffice to support a judgment of invalidity at trial." *Amazon.com, Inc.*, 239 F.3d at 1358–59. The Court therefore does not consider itself bound to the reasoning in those cases.

Second, Lup attempts to show that the validity question raised by the Office Action lacks substantial merit. Lup argues that Counter-Defendants already knew about CN '921 prior to completing its PI briefing but failed to adequately develop an argument as to how CN '921 anticipates the '881 Patent. (Lup Resp., Dkt. 177, at 18–19). Counter-Defendants also raised CN '921 in their first motion to vacate the PI in this case. As a result, Lup contends, "The Court should not allow [Counter-Defendants] to make these arguments now—over a year after the initial PI

---

[11] This case was later cited by the Federal Circuit in support of its reasoning that "[t]he grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (i.e., that a 'substantial new question of patentability' has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent invalidity." *Hoechst Celanese Corp.*, 78 F.3d at 1584 (citing *Acoustical Design*, 932 F.2d at 942).

briefing—when [Counter-Defendants] had everything needed to make its arguments available to [them] from the very start. That is the very antithesis of the 'changed circumstances' requirement imposed by the Supreme Court." (Lup Resp., Dkt. 177, at 19). Relatedly, Lup also cites as support *M-I LLC v. Fpusa, LLC*, in which another court in this District purportedly "noted the importance of the fact that the prior art in the reexam was newly discovered and not known to the Defendant during the original preliminary injunction briefing." (Lup Resp., Dkt. 177, at 17). *See M-I LLC v. Fpusa, LLC*, No. SA:15-CV-406-DAE, 2016 WL 6088344, at *2–3 (W.D. Tex. Oct. 17, 2016). Lup asserts that, because Counter-Defendants do not rely upon newly discovered prior art in their motion, there is no such new art to give rise to a changed circumstance.

In *M-I LLC*, however, the USPTO had merely *instituted review* of the asserted patent—it had not, as in the instant case, issued an initial office action within that reexamination proceeding. *See id.* at *2. That opinion is therefore not persuasive in this context, where the USPTO has preliminarily rejected the '881 Patent's claims. Counter-Defendants do not need to show the Court newly discovered prior art to give rise to a changed circumstance, as there is a different changed circumstance—the USPTO's preliminary rejection of all 18 of the '881 Patent's claims.

Third, Lup contends that the reexamination process is unlikely to result in the rejection of all of the '881 Patent's claims. (Lup Resp., Dkt. 177, at 20). It cites as support generic statistics from the USPTO:

> The reexam process is inherently unlikely to be successful. The federal circuit explicitly noted that "[t]he Annual Report of the Patent and Trademark Office for 1994 states that 89% of the reexamination requests were granted that year, but only 5.6% of the reexamined patents were completely rejected with no claims remaining after reexamination." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996), fn. 2. The cited statistics have since become even more extreme. The most recent ex parte reexamination filing data, published September 30, 2024, shows that 92.6% of the reexamination requests were granted, but only 14.1% of the reexamined patents were completely rejected with no claims remaining after reexamination.

(Lup. Resp., Dkt. 177, at 20). Lup's citations to the USPTO statistics are problematic for multiple reasons. First, the statistics cited regarding the percentage of reexamined patents that were completely rejected are based on the number of patents for which reexamination was instituted— not based on the number of patents for which reexamination was instituted **and then were initially fully rejected**. For example, in 1994, 89% of reexamination requests were granted but only 5.6% of those reexamined patents were completely rejected. (*Id.*). Though that 5.6% number may have been persuasive when ex parte reexamination was first granted by the USPTO, the '881 Patent's claims have now been preliminarily rejected in their entirety. It therefore is now much more likely that the USPTO will issue a final office action rejecting all claims than it was at the outset of reexamination. Second, regarding Lup's claim that the "cited statistics have since become even more extreme," (*id.*), the statistics in fact show the exact opposite. They state that in 1994, only 5.6% of reexamined patents had all of their claims rejected, and in 2024, that percentage **increased** up to 14.1%— making it in fact **more** likely that all of the '881 Patent's claims will be rejected, not less likely.

Finally, Lup argues that CN '921 does not disclose or suggest all of the '881 Patent's claims. As to Claim 1 of the '881 Patent, which requires that the "magnetic cable has a substantially rectangular cross section defining a pair of substantially planar and parallel major surfaces," Lup contends that CN '921 does not disclose a rectangular cross section and instead discloses a circular cross section. (Lup Resp., Dkt. 177, at 22). It points to an image included in the CN '921 Patent as depicting a cable with a circular cross section:



(*Id.*; CN '921 Patent, Dkt. 177-1, at 37). According to Lup, the translation of CN '921 provided to

the USPTO by Counter-Defendants for the reexamination was a "machine translation," and a

human translation of the patent has slight differences. The machine translation states: "A method of

preparing a data line according to claim 1, where [] that the section shape of the data line is one of

the circular, flat, oval regular shape, or any irregular shape." (Machine Translation, Dkt. 176-3, at 3).

This machine translation was relied upon by the USPTO examiner for his initial rejection of Claim 1

of the '881 Patent. (USPTO Non-Final Office Action, Dkt. 176-1, at 7 ("CN '921, Claim 5, 'the

[cross-]section shape of the data line is one of the circular, flat, oval regular shape, or any irregular

shape,' where at least a 'flat' and/or 'oval regular shape' is a 'substantially rectangular' shape.")). The

human translation of the shape disclosed by the CN '921 Patent states: "a cross-sectional shape of

the data cable is one of regular shapes of circular, flat and elliptical, or is any irregular shape."

(Human Translation, Dkt. 177-1, at 18–19). Lup contends that, based on the figure above and the

human translation, the CN '921 Patent does not disclose a rectangular cross-section. (Lup Resp.,

Dkt. 177, at 22).

Though Lup's argument is well-taken, the Court finds that it is not enough to show that the

"substantial question" raised by the non-final rejection "lacks substantial merit." *See Amazon.com, Inc.,*

239 F.3d at 1350–51 ("If the [alleged infringer] raises a substantial question concerning either

infringement or validity, *i.e.,* asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue."). For one, though the figure shown above depicts a circular cross-section, Federal Circuit precedent is clear that "drawings are not meant to . . . limit the scope of coverage defined by the words used in the claims themselves." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001); *see also TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1138 (Fed. Cir. 2004) ("[T]he fact that the drawings are limited to a particular embodiment does not similarly limit the scope of the claims."). The Court therefore must look at the "full breadth of claim scope supported by the words of the claims." *TI Grp.*, 375 F.3d at 1138. Even using the human translation provided by Lup—"a cross-sectional shape of the data cable is one of regular shapes of circular, flat and elliptical, or is any irregular shape"—there is a valid argument that the "full breadth of [the] claim scope" *does* include a rectangular cross-section. It explicitly teaches that the cable may be circular "*or* . . . any *irregular* shape.*"* (Human Translation, Dkt. 177-1, at 18–19) (emphasis added). A rectangle is an irregular shape, as its sides are not equal lengths. Thus, there remains "substantial merit" to the question of whether the CN '921 Patent does in fact include a cable with a rectangular cross-section.[12]

Finally, as to Claims 8, 12, 14, and 15, Lup argues that Counter-Defendants' motion provides no analysis for the motivation to combine CN '921 with the Dlugas and Aase references.[13] The Court disagrees. Counter-Defendants submitted to the Court a claim chart, (Dkt. 176-2), giving a

---

[12] Lup also argues that, regarding the '881 Patent's requirement that the cable have a "pair of major surfaces [that] lie within a first and second polarity region of the persistent magnetic field," the CN '921 Patent cannot teach a "pair of major surfaces [that] lie within a first and second polarity region of the persistent magnetic field because the cable described in CN '921 has no major surfaces because it is circular or at most a 'flattened circle.'" (Lup Resp., Dkt. 177, at 25). Because the Court has found that it is possible the CN '921 Patent teaches a rectangular cross-section and is not necessarily circular (or elliptical), the Court finds that this argument also does not prove that the challenge to the '881 Patent's validity lacks substantial merit.

[13] "In determining whether there would have been a motivation to combine prior art references to arrive at the claimed invention, a challenger must show a reason why a skilled artisan would have made the combination. Whether a skilled artisan would have been motivated to combine references is a question of fact." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1376 (Fed. Cir. 2024) (citing *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (en banc)).

"point-by-point analysis demonstrating the grounds for invalidity." (Mot. to Vacate, Dkt. 176, at 11).

The claim chart includes an explanation for why it would be obvious to a skilled artisan to make the

asserted combinations:

- Claim 8: "It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to use insulation, such as one with 'a low dielectric constant' in Dlugas, around the wires of CN '921, which is of 'great importance' in data transmission lines, in particular those in high frequency/speed data transmission lines, in particular those in high frequency/speed data transmissions." (Claim Chart, Dkt. 176-2, at 23).
- Claim 12: "It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to have the outer sheath of the cable in CN '921 be made of silicon-rubber, as in Dlugas, to ensure 'data transmission at high data rates . . . without interference.'" (*Id.* at 24).
- Claim 14: "It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to use a compression molding process, as in Aase, to form the data cable of CN '921 such that a 'single-segment unibody cable' may be formed, which reduces the need for additional processing of other segments." (*Id.* at 25).
- Claim 15: It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to use an injection molding process, as in Aase, to form the data cable of CN '921 such that a 'single-segment unibody cable' may be formed, which reduces the need for additional processing of other segments." (*Id.* at 25–26).

Though the above motivations for combination are merely copied from the USPTO Office Action,

(Dkt. 176-1), the Court nonetheless finds the explanations to be sufficient, as they describe why a

skilled artisan would have been motivated to make the combinations of prior art to arrive at the '881

Patent and go beyond merely alleging that the individual elements of the claimed inventions were

each known in the prior art. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015)

(explaining that "obviousness concerns whether a skilled artisan not only *could have made* but *would*

*have been motivated* to make the combinations or modifications of prior art to arrive at the claimed

invention") (emphasis in original); *Natera, Inc.*, 106 F.4th at 1377 (citing *KSR Int'l Co. v. Teleflex, Inc.*,

550 U.S. 398, 418–19 (2007)) ("It is not sufficient to merely allege that the individual elements of the

claimed invention were each known in the prior art.").

In conclusion, though the USPTO's preliminary Office Action may not be "clear and convincing evidence," the Court finds that the examiner's detailed explanation for why CN '921 (including in combination with the Dlugas and Aase references) anticipates or makes obvious each of the '881 Patent's claims at the very least raises a "substantial question" as to the validity of the '881 Patent. (USPTO Non-Final Office Action, Dkt. 176-1, at 4–14). *See Amazon.com, Inc.*, 239 F.3d at 1358–59 ("The showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself."). The Court acknowledges that the Office Action is not final, that Lup is challenging service of the ex parte reexamination, and that Lup still has the ability to make claim amendments or file new claims.[14] But, based on the evidence currently before the Court, and considering a preliminary injunction in a patent case is "extraordinary relief," *see id.* at 1359, the Court finds that Counter-Defendants have met their burden of demonstrating a changed circumstance and that Lup has not met its burden of continuing to show a reasonable likelihood of success on the merits. *See DUSA Pharms.*, 2007 WL 748448, at *3 ("The Court recognizes that . . . the PTO's final word on the '468 Patent's validity has not yet issued. [The patent holder], however, has not shown that the validity question raised by the reexamination order and the Office Action lacks substantial merit."). Because Lup has not met its burden on this first element of the preliminary injunction analysis, the Court will not reach the remaining three factors.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Counter-Defendants' Opposed Motion to Vacate Preliminary Injunction, (Dkt. 176), is **GRANTED**.

---

[14] This Order does not prevent Lup from filing a new motion for injunctive relief should new circumstances warrant it (e.g., if the USPTO ultimately confirms claims of the '881 Patent).

**IT IS FURTHER ORDERED** that the Court's PI, (Dkt. 128), and Amended PI, (Dkt. 130), are **VACATED**.

**SIGNED** on January 20, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE